NANCY DOMINGUEZ, Indiv. and as Parent and Guardian of Derek Dominguez, a Minor, Plaintiff-Appellant, v. ST. JOHN'S HOSPITAL, Defendant-Appellee.

First District (4th Division)   No. 1—91—2586

Opinion filed April 22, 1993.—Modified on denial of rehearing February 24, 1994.

592

Patrick J. Kenneally and Thomas L. Trinley, both of Patrick J. Kenneally, Ltd., of Chicago, for appellant.

David J. Loughnane and Charles F. Redden, both of Pretzel & Stouffer,

Chartered, of Chicago (Robert Marc Chemers and Scott O. Reed, of counsel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Nancy Dominguez, individually and as the mother of minor Derek Dominguez, brought a medical malpractice action against defendant, St. John's Hospital, in the circuit court of Cook County. This action arose out of the events surrounding Derek's birth which left him brain damaged and mentally retarded. After a jury trial, judgment was entered in favor of defendant and plaintiff appeals.

On appeal, plaintiff contends (1) the trial court erred in admitting defendant's evidence of genetic causation because defendant could not assert a causal connection between a genetic disease and Derek's condition; (2) the trial court's allowance of defense expert Dr. Charleen Moore's testimony violated Supreme Court Rule 220 (107 Ill. 2d R. 220); (3) the trial court erred in allowing defense expert Dr. Joseph Pasternak to testify because he altered his views subsequent to his deposition and only 33 days before trial in violation of Supreme Court Rule 220; (4) the trial court erroneously precluded plaintiff's expert, Dr. Edmund Egan, from using technical medical literature to support his direct examination testimony; (5) defendant repeatedly violated the trial court's exclusionary rulings; and (6) defense counsel's conduct warrants sanctioning.

Defendant cross-appeals the trial court's denial of its motion for costs under the Code of Civil Procedure. Ill. Rev. Stat. 1989, ch. 110, par. 5—109.

We affirm.

On July 29, 1979, plaintiff's bag of water broke while at home in Peoria, Illinois. She immediately called Dr. Gerald Riordan, her obstetrician, at St. John's Hospital in Springfield, Illinois. Dr. Riordan told plaintiff to come to the hospital, a distance of about 75 miles. Plaintiff arrived at the hospital at approximately 8:30 a.m. and was taken to the labor room.

Plaintiff began to receive fluids intravenously at about 9:30 a.m., and Nurse Christine Szablowski placed a fetal monitor on plaintiff's stomach to monitor the baby's condition. In order to induce contractions, Dr. Riordan, the physician in charge, ordered Pitocin administered to plaintiff at 10:38 a.m. Shortly thereafter, plaintiff began to experience nausea and feverish symptoms. Both Nurse Szablowski and Nurse Claudia Beckmann testified that plaintiff's symptoms did not result from the Pitocin, which ceased to be administered at 10:58 a.m.

It was then determined that plaintiff might need a cesarian

section. Dr. Riordan apprised her of the risks of the procedure and, at 11:20 a.m., she signed a consent form. At approximately noon, Dr. Riordan told plaintiff it would, indeed, be best to perform a cesarian section and pre-operative preparations were made. Nurse Szablowski stated that Dr. Riordan performed the cesarian section due to fetal distress in labor. This diagnosis was confirmed by the attending resident, Dr. Richard Dermody, in his operative report. Derek was delivered at 12:27 p.m.

Derek was examined according to the Apgar scoring method used to evaluate newborns. This method rates the baby in the following five categories: heart rate, color, muscle tone, respiration and reaction to stimulus. A maximum score of two is assigned in each category. Derek scored 1 out of a possible 10. He currently suffers from brain damage and severe mental retardation and resides at the Misericordia Home.

In July 1981, plaintiff filed suit against Dr. Riordan and his corporation, Riordan and Simpson. In October 1981, plaintiff amended her complaint and added defendant. Plaintiff reached a settlement with Drs. Riordan and Simpson in August 1990, and proceeded to trial against defendant. Plaintiff alleged that Derek suffered perinatal asphyxia during labor, claiming defendant was negligent in its failure to timely recognize Derek's fetal distress either through its monitoring equipment or through the labor room nurse.

After a trial by jury, judgment was entered for defendant and plaintiff appeals.

■ Initially on appeal, plaintiff opines that defendant's expert testimony regarding genetic causation of Derek's condition should have been stricken as speculation because the experts failed to assert a causal connection between a genetic disease and Derek's condition "within a reasonable degree of medical certainty."

Plaintiff argues, *inter alia*, that defendant's genetic causation theory, supported by Drs. Moore and Pasternak, was speculative because its expert, Dr. Reuben Matalon, conducted tests on Derek and found no genetic linkage. However, Dr. Moore testified that due to the fact that new genetic diseases are constantly being uncovered Derek may indeed have a genetic problem even though Dr. Matalon was unable to identify a specific disease. Accordingly, in appreciation of the variable nature of genetics, we believe that, although Dr. Matalon's tests did not detect any genetic disease in Derek, the testimony of Drs. Moore and Pasternak support the proposition that genetic causation cannot be eliminated.

Individuals are permitted to testify as experts when their experi-

ence and qualifications provide them with knowledge beyond that of lay persons and where their testimony aids the jury in reaching a conclusion. (*People v. Jordan* (1984), 103 Ill. 2d 192, 208.) In the case of expert medical testimony, we are accustomed to a doctor's opinion being prefaced by the phrase "within a reasonable degree of medical certainty." This phrase gives the medical opinion its legal perspective. It allows us to know that the opinion is an expression of medical probability based upon recognized medical thought and not mere guess or speculation. (See *Boose v. Digate* (1969), 107 Ill. App. 2d 418.) But, there is no magic to the phrase itself. If the testimony of the expert reveals that his or her opinions are based upon specialized knowledge and experience and grounded in recognized medical thought, it is of no consequence that the witness has failed to preface the opinions with the phrase, "within a reasonable degree of medical certainty." See *Redmon v. Sooter* (1971), 1 Ill. App. 3d 406, 412; *Boose,* 107 Ill. App. 2d at 422-24.

Dr. Moore, a professor of human genetics at the University of Texas Human Science Center, testified that based upon her experience and knowledge of Derek's records, she held the opinion that his condition was characteristic of a genetic basis. Dr. Moore acknowledged that Dr. Matalon's testing of Derek failed to identify a specific genetic problem; but, she disagreed with Dr. Matalon's conclusion that Derek's condition was not genetic in cause. It was her testimony that the scientific knowledge of genetics is not complete and, as such, an individual can possess a genetic problem even though the specific syndrome cannot be identified. We believe that Dr. Moore's testimony amply reflects that her opinions were based upon her specialized knowledge of genetics and not mere guess or speculation. The trial judge properly admitted her testimony for the jury to consider. See *Simon v. Lumbermens Mutual Casualty Co.* (1977), 53 Ill. App. 3d 380; *Scholle v. Continental National American Group* (1976), 44 Ill. App. 3d 716.

Dr. Pasternak, the head of pediatric neurology at Evanston Hospital, also rendered opinions as to the causes of Derek's condition. When asked on direct examination if he could offer opinions on the specific cause of Derek's condition within a reasonable degree of medical certainty considering the child's medical records and his examination of him, Dr. Pasternak responded:

> "Well, doctors don't use the term reasonable degree of medical certainty when they talk to each other or their patients, but I can tell you what I think the most likely cause of Derek's mental— severe mental retardation is."

He went on to state:

> "I think what I'm talking about is a level of certainty that will allow me to present this to my colleagues or to a family as what I think the cause of the problem is."

Thereafter, Dr. Pasternak opined that Derek's severe mental retardation was attributable to either an inborn error of metabolism or a brain malformation that might or might not be genetic in its underlying etiology. He testified that it was not caused by intrauterine asphyxia; however, he could not rule out intrauterine asphyxia as a contributor to Derek's motor disabilities. Dr. Pasternak articulated his expert opinions; he gave the medical basis for those opinions and described the level of certainty he had in those opinions. We are of the opinion that his explanation of his level of certainty is nothing more than a synonym for "within a reasonable degree of medical certainty," and our examination of his testimony reveals that it was both competent and relevant. The trial court did not err in refusing to strike it as speculative.

■ Second, plaintiff contends that allowing Dr. Moore to testify violated Rule 220 because her deposition was taken on the eighth day of trial.

Dr. Moore was disclosed by defendant as an expert on July 20, 1990, 61 days prior to the scheduled trial date. Rule 220(b)(1) provides: "[D]iscovery regarding *** expert witnesses will be completed not later than 60 days before the date on which the trial court reasonably anticipates trial will commence." (107 Ill. 2d R. 220(b)(1).) As Dr. Moore was only disclosed 61 days before trial, discovery of her could clearly not be completed prior to 60 days before the scheduled trial date in compliance with Rule 220.

Prior to trial, plaintiff properly filed a motion to bar Dr. Moore's testimony asserting a violation of Rule 220 and defendant, in turn, withdrew her as a witness. Plaintiff then insisted that the court give a jury instruction (Illinois Pattern Jury Instructions, Civil, No. 5.01 (2d ed. 1971)) (hereinafter IPI Civil 2d), enabling the jury to draw a negative inference from Dr. Moore's absence.

Reluctant to give the IPI Civil 2d and in fairness to both sides, the trial court attempted to fashion alternate, mutually acceptable remedies, all of which plaintiff rejected. Subsequently, in order to avoid the adverse instruction, defendant decided to call Dr. Moore and plaintiff deposed her eight days after the commencement of trial. Plaintiff now asserts that the untimeliness of Dr. Moore's deposition violated Rule 220.

As a result of plaintiff's vehement demand for an IPI Civil 2d, Dr. Moore was inopportunely deposed. The record indicates that Dr. Moore's testimony was entirely unnecessary for both sides and would

not have been offered had it not been for plaintiff's insistence on an IPI Civil 2d. This insistence resulted in the issue's last-minute resolution and, due to scheduling conflicts, Dr. Moore was not available to be deposed until after trial began.

We believe that this delay is absolutely attributable to plaintiff's gamesmanship in demanding an IPI Civil 2d. The record evinces extensive colloquy regarding the instruction and patently shows the inflexibility of plaintiff's position. Ultimately, plaintiff's unwillingness to compromise with respect to this issue forced the trial court to unnecessarily engage in mental gymnastics when attempting to hurriedly arrange the deposition of Dr. Moore.

This lengthy process is entirely due to plaintiff and it is particularly curious that what she now claims as error is a direct result of her actions. We find that, under the circumstances of this case, the trial court did not abuse its discretion in allowing Dr. Moore's testimony.

■ Third, plaintiff maintains that Dr. Pasternak's testimony was improper in scope and consequently a violation of Rule 220 because he testified as to genetic causation, a matter not addressed in his original deposition.

Plaintiff took Dr. Pasternak's deposition in September 1990, and in October of that same year the doctor submitted a supplemental opinion in accordance with Rule 220. Plaintiff had ample opportunity to redepose Dr. Pasternak as to anything contained in his supplemental opinion, but she was not so inclined. Prior to trial, plaintiff moved *in limine* to bar Dr. Pasternak's supplemental opinions, opining that his testimony should be confined to the contents of his original deposition.

Rule 220(c)(3) states: "A party shall be required to seasonably supplement his [an expert's] answers to interrogatories propounded under this rule as additional information becomes known to the party or his counsel." (107 Ill. 2d R. 220(c)(3).) Thus, Dr. Pasternak's supplemental opinions are explicitly permissible. Furthermore, we acknowledge the significance of plaintiff's opportunity to take the supplemental deposition of Dr. Pasternak. We find that plaintiff's ability to ameliorate the prejudice of which she now complains and her declination to exercise that ability are not without import.

■ Fourth, plaintiff posits that the trial court erred in disallowing plaintiff's expert, Dr. Egan, to supplement his direct examination testimony with technical medical literature. It is the province of the trial court to balance the probative value of this material against its prejudicial impact or tendency to create confusion. Such material may be excluded within the trial court's discretion in circumstances

which it deems appropriate. (*People v. Anderson* (1986), 113 Ill. 2d 1, 12.) The record reveals the trial court's reluctance to saddle the jury with the burden of sorting out references to various medical texts and treatises. However, during direct examination plaintiff was allowed to repeatedly refer to the titles of medical authority which supported Dr. Egan's position. We believe that these references provided the jury with a sufficient indication that Dr. Egan's views were substantiated by others in his field. We find no abuse of discretion.

Moreover, "[W]here it appears that an error did not affect the outcome in the trial court, or where the reviewing court can see from the entire record that no injury has been done, the judgment will not be disturbed." (*Schuchman v. Stackable* (1990), 198 Ill. App. 3d 209, 228; see *Greene v. Rogers* (1986), 147 Ill. App. 3d 1009.) Accordingly, any error associated with the trial court's refusal to allow Dr. Egan to recite from medical texts or treatises is harmless.

■ Fifth, plaintiff asserts that defendant habitually violated the trial court's exclusionary rulings. Plaintiff asserts 54 violations pertaining to motions *in limine* and "other" exclusionary rulings. We decline to conduct an individual examination of each contended error. After a careful review of the record, we perceive no error in the trial court's admission of evidence.

■ Sixth, plaintiff argues that defense counsel should be sanctioned for misconduct. We disagree.

Plaintiff asserts that defense counsel made improper remarks during closing argument, including the implication that Derek was not the plaintiff in this case, the personalization of the verdict against Nurse Szablowski, and the misleading suggestion that Derek did not need any money from the verdict. Plaintiff proffers the former in addition to numerous contended violations of *in limine* rulings and discovery misconduct. Our review of the alleged errors in context fails to reveal any misconduct and such statements do not warrant sanctions, nor do they support a request for a new trial.

■ Still to be considered is defendant's assertion that the trial court improperly denied its motion for costs under section 5—109 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 5—109). Defendant, in a rather cursory fashion, contends that it is automatically entitled to recover costs under section 5—109 simply because had the plaintiff prevailed she would have been entitled to costs. We disagree.

Solely based on this general statute, defendant postulates its right to recover costs respecting both its appearance and presentation of evidence at trial. "A successful litigant *** is not entitled to

recover the ordinary expenses of litigation and trial preparation, and only those items designated by statute to be allowable can be taxed as costs." (*Naiditch v. Shaf Home Builders, Inc.* (1987), 160 Ill. App. 3d 245, 268.) Although costs are allowable to reimburse the prevailing party in some instances, section 5—109, upon which defendant places sole reliance, does not grant it automatic recovery due to the statute's failure to specify precisely what constitutes costs. Defendant does not point to any additional statutory authority in support of its contention. We believe the trial court properly denied defendant's motion for costs under section 5—109.

For the aforementioned reasons, the judgment of the circuit court is affirmed.

Affirmed.

CAHILL, P.J., and HOFFMAN, J., concur.