FIRST DIVISION

1-06-3698

| | | |
|---|---|---|
| EFRAIN TORRES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 L 3805 |
| | ) | |
| MIDWEST DEVELOPMENT COMPANY, | ) | Honorable |
| | ) | Cheryl A. Starks, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiff, Efrain Torres, brought this premises liability action, seeking to recover damages for personal injuries sustained by him on January 11, 1999, when he slipped and fell on real property owned by defendant, Midwest Development Company. Following trial, the jury rendered a verdict for defendant, and the trial court entered judgment on the verdict. The trial court denied plaintiff's posttrial motion, and plaintiff has filed a timely appeal, contending that the trial court erred by barring plaintiff's expert, Michael Eiben, from testifying. We affirm.

BACKGROUND

Plaintiff filed this premises liability action after he slipped and fell, sustaining a bimalloelar fracture to his right ankle, outside of his third-floor apartment, located at 2608 West LeMoyne Street in Chicago, Illinois. In his complaint, plaintiff alleged that defendant "[i]mproperly operated, managed, and maintained *** the [the property] so as

to permit the unnatural accumulation of ice and snow in front of the [entryway] to [p]laintiff's apartment." Plaintiff also alleged that defendant "failed to inspect and repair gutters and roof overhangs which caused the unnatural accumulation of ice and snow in front of the [entryway] to [p]laintiff's apartment, and ***[f]ailed to inspect and repair defects in the porch and deck by the [entryway] to [p]laintiff's apartment which caused the unnatural accumulation of ice and snow."

Michael Eiben was disclosed as plaintiff's expert witness prior to trial. Eiben was retained by plaintiff to offer expert opinion testimony regarding how defects in the building's roof caused an unnatural accumulation of ice on plaintiff's porch that allegedly caused plaintiff's fall.

Before reaching Eiben's opinions, we briefly summarize the operative facts concerning the property and its roof, which are necessary to an understanding of those opinions.

The building is a three-story masonry residential apartment building. Each of the three stories contains three apartments. The primary means of ingress and egress to and from the individual apartments is a rear outdoor stairway.

The third floor of the apartment building includes a large, outdoor wooden porch that is common to all three of the building's third-floor apartments. At the time of defendant's purchase, the roof of the building was composed of two parts. The first part of the roof, covering the masonry building itself, was composed of asphalt. The second part of the roof was composed of single-ply wooden planking and extended over part of

the porch situated on the third floor of the building. At some point prior to and through the time of plaintiff's injury, the masonry roof and the wooden planking roof were set at the same level.

Shortly after purchasing the property in 1997, defendant hired a roofing company to repair the building's roof because water was leaking into an apartment in the complex. At that time, a new asphalt roof was installed over the preexisting asphalt roof, and a "peel and stick" method was utilized to create a seam between the newly installed asphalt roof and the preexisting wooden plank roof. The material used for the "peel and stick" repairs was rubber-based.

In 2000, after the time of plaintiff's injury, the same roofing company installed an entirely new roof over the structure, including the porch roof. At that time, the newly constructed roof consisted of only asphalt. The roof was constructed as one continuous structure extending over the porch and contained no gaps.

We now turn to a discussion of Eiben's opinions.

Prior to trial, defendant filed several motions *in limine* contesting the proffered testimony of plaintiff's retained expert, Michael Eiben. Eiben provided a discovery deposition in this case, which was utilized by the trial court to determine if his opinions would be allowed into evidence.

At his discovery deposition, Eiben testified that he earned a degree in architecture from Notre Dame University in 1966. He completed an apprenticeship with a licensed architect and earned his Illinois architect's license in 1975 after serving in the military.

Eiben practiced as an architect until 1999. After that point, he has devoted all of his professional time as an expert witness. He testified that he has designed numerous buildings including schools, healthcare facilities, prisons, residential housing and other commercial real estate. He testified that he designed the roof for every structure that he designed and inspected every roof to ensure compliance with his plans and specifications, city ordinances, and state laws.

Eiben considers himself an expert in roofing and its composition. He stated that Illinois requires continuing education courses for architects and that he has met those requirements every year since his licensure. He has testified as an expert in 33 trials since 1975, but could not recall how many trials he has testified in the past five years. When asked if he considers roofing a specialty and whether he considers himself a roofing specialist, he stated that architects do not use the term "specialist." When asked the same question later in his deposition, Eiben stated that he does not consider himself a roofing specialist. Eiben was also unfamiliar with many professional organizations related to roofing and the composition of roofing materials.

Eiben inspected the property on September 20, 2005, six years and eight months after plaintiff's fall and after the roof's structure and composition had been changed. He testified that the weather conditions on September 20, 2005, were "mild and sunny." After inspecting the property and reviewing climatological data for January 1999, Eiben opined that an unnatural accumulation of ice formed on plaintiff's porch in one of two ways. Firstly, Eiben opined that water leaked through a gap between the roof of the

masonry building and the wooden porch roof, as they existed at the time of plaintiff's injury. Secondly, Eiben opined that the unnatural accumulation of ice on the third-floor porch was caused by an inadequate drainage system. Eiben testified that his opinions were based only on his inspection of the premises. There was no foundational testimony that he was aware of the structure as it existed at the time of plaintiff's injury. He testified that he did not rely on the deposition testimony of any of the people deposed, but testified that their deposition testimony was "consistent with" his opinions without providing specifics. Eiben specifically testified that he reviewed several depositions the night before his own deposition, but had formulated his opinions well in advance of his review of those depositions.

Eiben stated that water may have leaked through a gap between the roof of the masonry building and the wooden porch roof, as they existed at the time of plaintiff's injury. He testified that the roof at that time was defectively designed, because the porch roof was set at the same level as the asphalt roof. He stated that wooden porch roofing in a like building should be constructed "somewhat" lower than masonry roofing and should contain flashing between the two. He explained that flashing is necessary to seal the gap between the two materials because wood and asphalt expand and contract at different rates, leading to conditions whereby leaking could occur through a gap between the two, especially during wintertime when contraction of the two materials is at its maximum.

Eiben criticized the "peel and stick" repairs made to the roof in 1997. He testified that the rubber material used to make the "peel and stick" repairs was insufficient to

remedy the dangerous condition caused by the absence of flashing between the masonry and wooden roofs. Eiben stated that he would not expect the rubber material to last more than one warm/cold weather cycle in Chicago and certainly expected the material to have failed by the time of plaintiff's injury. Eiben conceded that he never observed the 1997 "peel and stick" repairs, as an entirely new roof was installed in 2000, as noted.

Eiben stated that his opinion was based solely on his observation of water stains on the underside of the porch roof. He conducted no testing to determine the age of the water stains and stated that he had no way of knowing if the water stains existed prior to or after the 1997 repairs were made to the roof. He could not testify to a reasonable degree of architectural or scientific certainty that the water stains he observed in September 2005 existed in January 1999 when plaintiff was injured. He stated that scientific testing could have been used to determine the precise age of the water stains, "other than simply looking at the stain," but that would have involved "go[ing] to another level of testing," which he did not do.

In Eiben's alternative opinion that an unnatural accumulation of ice formed on the third-floor porch of the building because of an inadequate drainage system, he testified that he was "very critical" of the building's drainage system and the way the system was maintained. However, he offered no explanation as to why the system was inadequate and provided no basis for his opinions.

Eiben also stated that a phenomenon known as "ice damming" in conjunction with the building's inadequate drainage system may have contributed to the unnatural

accumulation of ice on the porch. Eiben stated that "ice damming" occurs when a building emits heat from its roof (a process called thermal transmission) causing existing snow or ice on the roof surface to melt, whereby the melted snow or ice, now in liquid form, travels to and refreezes over openings to the gutter system's downspouts. He testified that other liquid caused by the same thermal transmission thereafter travels out of the gutter system because the liquid has nowhere else to go. He stated that the roof of the building was poorly designed and was susceptible to "ice damming."

Eiben did not review any blueprints related to the building in formulating his opinion. He did not pour water on the roof and did not observe any drainage patterns. He did not make measurements and specifically did not measure the roof's overhang. Eiben stated that his opinion regarding "ice damming" was consistent with several citations issued by the City of Chicago regarding inadequate heating of the building. Eiben stated that inadequate heating conditions causes an uneven distribution of thermal transmission, leading to prime conditions for "ice damming." However, Eiben could not testify whether the citations were issued at the time of plaintiff's fall or if the inadequate heating conditions had been remedied prior to plaintiff's fall. He could not testify to a reasonable degree of architectural or scientific certainty that "ice damming" occurred around the time of plaintiff's injury. Eiben stated that "ice damming" was consistent with one of the depositions he had reviewed, but stated that he in no way relied on the deposition to form his opinion. He could not recall whose testimony was consistent with the occurrence of "ice damming."

After reviewing Eiben's opinions and factual basis therefore, and hearing extended arguments from both parties, the trial court barred Eiben from trial. The trial court found that Eiben's testimony was not admissible because he had "no rational basis for his opinions." Incorporated into that ruling was the transcript from the hearing.

In ruling to bar Eiben's opinion testimony, the trial court firstly found that Eiben's opinions could not be based upon his 2005 inspection because he never inspected the roof as it existed at the time of plaintiff's injury, since the entire roof was replaced in 2000. With regard to Eiben's opinion that the "peel and stick" repairs were ineffective, the trial court found that Eiben never examined the repairs, since, again, the entire roof was replaced prior to his inspection. With regard to Eiben's alternate opinion, that an unnatural accumulation of ice occurred on plaintiff's porch due to an inadequate drainage system and "ice damming," the trial court found that Eiben did not offer any explanation as to why the building's drainage system was inadequate and could not testify to a reasonable degree of architectural or scientific certainty that "ice damming" occurred around the time of plaintiff's injury.

The trial court also found that although certain depositions could have supplied a factual basis for Eiben's opinions, Eiben stated that he did not rely on any depositions to formulate his opinions.

We note that plaintiff conceded that there is no foundation for Eiben to testify about the drainage system, including the building's gutter system. In plaintiff's counsel's

words, Eiben could not testify regarding the drainage system because "the water never reached the gutters."

The matter was tried before a jury without Eiben's testimony. The jury returned a verdict in favor of defendant.

Plaintiff filed a posttrial motion for a new trial, contending that the trial court erred by barring Eiben's testimony. The court denied plaintiff's posttrial motion, stating that although Eiben "was competent to testify as to architectural opinions about roofs including slopes and angles," his testimony was barred because "he did not articulate a real basis for his opinions that the slopes and angles of the roof caused an unnatural accumulation of ice." The trial court also found that Eiben's opinions were properly barred from trial because he could not hold his opinions to a reasonable degree of architectural or scientific certainty.

ANALYSIS

On appeal, plaintiff contends that the trial court erred by barring Eiben as a trial witness. With regard to expert testimony, it is well settled that "[a] person will be allowed to testify as an expert if his experience and qualifications afford him knowledge that is not common to laypersons, and where his testimony will aid the trier of fact in reaching its conclusions." *Thompson v. Gordon*, 221 Ill. 2d 414, 428 (2006), citing *People v. Miller*, 173 Ill. 2d 167, 186 (1996). It has long been recognized that special care must be taken by the trial court in ruling upon the admissibility of scientific

9

evidence since juries tend to equate science with truth and may place substantial weight on any evidence labeled scientific. *People v. McKown*, 226 Ill. 2d 245 (2007). The critical issue is whether the expert's legal testimony aids the trier of fact by explaining a factual issue beyond one's ordinary knowledge. *Martin v. Sally*, 341 Ill. App. 3d 308, 315 (2003), citing *Eychaner v. Gross*, 321 Ill. App. 3d 759, 779 (2001). The admission of expert testimony is within the discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. *Martin*, 341 Ill. App. 3d at 315, citing *In re Detention of Tittlebach*, 324 Ill. App. 3d 6, 10 (2001).

Before proceeding to the issue of whether the trial court abused its discretion by barring Eiben as a trial witness, we note that plaintiff failed to make an offer of proof regarding Eiben's proposed testimony at the trial level. We must first determine what effect, if any; plaintiff's failure to make an offer of proof has on this appeal.

Generally, when a trial court refuses evidence, no appealable issue remains unless a formal offer of proof is made. *Volvo of America Corp. v. Gibson*, 83 Ill. App. 3d 487, 491 (1980). The purpose of an offer of proof is to inform the trial court, opposing counsel, and a reviewing court of the nature and substance of the evidence sought to be introduced. *Volvo of America Corp.*, 83 Ill. App. 3d at 491. Where it is not clear what a witness would testify to, or what the basis for his testimony is, the offer of proof must be considerably detailed and specific, so that a reviewing court can thereby review whether the exclusion was proper. *Volvo of America Corp.*, 83 Ill. App. 3d at 491.

However, an offer of proof is not required where it is apparent that the trial court clearly understood the nature and character of the evidence sought to be introduced. *Volvo of America Corp.*, 83 Ill. App. 3d at 491. Such is the case here. A review of the record demonstrates that the trial court had before it Eiben's written report and lengthy deposition testimony, which contained within them all of the opinions that he would have provided at trial. The trial court also heard extensive argument from both parties regarding Eiben's qualifications, opinions and the lack of a factual basis for those opinions.

Having determined that plaintiff's failure to make an offer of proof did not result in waiver, we now turn to a determination of whether the trial court abused its discretion by barring Eiben as a trial witness.

As noted, the trial court barred Eiben's testimony for two reasons. First, the trial court barred Eiben's opinions from trial because the opinions were not based on a reasonable degree of architectural or scientific certainty. Second, the trial court barred Eiben's opinions from trial because the opinions had no factual basis. For the reasons that follow, we find that the trial court did not abuse its discretion by barring Eiben's opinions from trial.[1]

---

[1] On appeal, the parties argue extensively regarding whether Eiben was qualified to testify about roofing and its composition. Despite the parties' extensive arguments, we decline to address whether Eiben was qualified to testify regarding roofing and its composition for two reasons. First, despite the parties' lengthy arguments regarding

11

1-06-3698

A.  Reasonable Degree of Architectural or Scientific Certainty

As noted, the trial court barred Eiben's testimony from trial because he could not hold his opinions to a reasonable degree of architectural or scientific certainty.

To begin, we recite the familiar rule that "[i]ndividuals are permitted to testify as experts when their experience and qualifications provide them with knowledge beyond that of lay persons and where their testimony aids the jury in reaching a conclusion." *Dominguez v. St. John's Hospital*, 260 Ill. App. 3d 591, 594-95 (1993).  An expert's testimony must be to a reasonable degree of certainty within the field of his expertise to be admissible.  *Aguilera v. Mount Sinai Hospital Medical Center*, 293 Ill. App. 3d 967, 972 (1997).  An expert's statement that his or her opinions are based on a reasonable degree of certainty within a given field allows the courts to know that the opinions are an expression of the general consensus of recognized thought within the given field. *Dominguez*, 260 Ill. App. 3d at 595; *Yates v. Chicago National League Ball Club, Inc.*, 230 Ill. App. 3d 472, 485 (1992).  In Illinois, the admission of expert testimony is governed by the standard set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

Eiben's qualifications, the basis for the trial court's order barring Eiben's testimony was that his opinions (1) were not held to a reasonable degree of architectural or scientific certainty, and (2) lacked a factual basis.  Second, having already determined that the trial court did not abuse its discretion by barring Eiben's testimony for the reasons given in the trial court's order, any determination of whether Eiben was qualified to testify regarding roofing and its composition would be *dictum*.

12

*Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 76-77 (2002). Pursuant to the *Frye* standard, which is also known as the "general acceptance" test, scientific evidence is only admissible at trial if the underlying methodology or scientific principle upon which the opinion is based is sufficiently established to have gained general acceptance in the particular field in which it belongs. *Donaldson*, 199 Ill. 2d at 77.

In other words, when an expert testifies to a reasonable degree of certainty within a given field, it means that others in the field would agree with the expert's opinion. However, "there is no magic to the phrase itself." *Dominguez*, 260 Ill. App. 3d at 595. "If the [expert's testimony] reveals that his or her opinions are based upon specialized knowledge and experience and grounded in [scientific, medical, architectural, etc.] thought, it is of no consequence that the witness has failed to preface the opinions with the phrase, '*within a reasonable degree of certainty*.' " (Emphasis added.) *Dominguez*, 260 Ill. App. 3d at 595.

However, the opposite is true when an expert testifies that he cannot base his opinion of architectural or scientific certainty. In the instant case, Eiben testified that he could not testify to a reasonable degree of architectural or scientific certainty whether (1) the water stains on the underside of the third-floor porch were present at the time of plaintiff's fall, (2) whether ice damming had occurred around the time of plaintiff's fall, (3) whether ice or snow was on plaintiff's concrete step at the time of plaintiff's fall, and (4) whether plaintiff actually slipped on an unnatural accumulation of ice. Accordingly, Eiben's testimony regarding such matters was properly excluded from the jury.

13

### B. Insufficient Factual Basis

As noted, the trial court also barred Eiben's testimony from trial because his opinions lacked a sufficient factual basis. "An expert's opinion is only as valid as the basis and reasons for the opinion." *Wilson v. Bell Fuels, Inc.*, 214 Ill. App. 3d 868, 875 (1991), citing *McCormick v. Maplehurst Winter Sports, Ltd.*, 166 Ill. App. 3d 93, 100 (1988). "A party must lay a foundation sufficient to establish the reliability of the bases for the expert's opinion." *Petraski v. Thedos*, No. 1-06-2914, slip op. At 11 (March 3, 2008), citing *Turner v. Williams*, 326 Ill. App. 3d 541, 552-53 (2001). Expert opinions based on guess, speculation, or conjecture are inadmissible. *Modelski v. Navistar International Transportation Corp.*, 302 Ill. App. 3d 879, 886 (1999).

In *Aguilera v. Mount Sinai Hospital Medical Center*, 293 Ill. App. 3d 967 (1997), the plaintiff's decedent was taken to the emergency room complaining of numbness on the right side of his body. About six or seven hours later, a CT scan was taken, revealing a brain hemorrhage. The patient died a few days later. The plaintiff presented two experts who testified that the emergency room physician's delay in taking the CT scan caused the decedent's death. It was the plaintiff's theory that a diagnosis of the condition would have triggered surgical intervention to prevent the decedent's death. However, on cross-examination, the plaintiff's experts admitted that they would defer to a neurosurgeon as to whether surgery should have even been performed; yet the only neurosurgeons testifying in the case stated that surgery would not have been appropriate.

This court held that the opinions offered by the plaintiff's experts lacked a sufficient factual basis and were therefore based on conjecture. *Aguilera*, 293 Ill. App. 3d at 975.

Likewise, in the case at bar, Eiben's proffered opinions lacked any factual basis.

As noted, Eiben expressed the opinion that an unnatural accumulation of ice formed on the third-floor porch of the building in one of two ways. Eiben opined that water leaked through a gap between the roof of the masonry building and the wooden porch roof, as they existed at the time of plaintiff's fall. Alternatively, Eiben opined that the unnatural accumulation of ice on the third-floor porch was caused by an inadequate drainage system.

In ruling to bar Eiben's opinions for lack of a sufficient factual basis, the trial court firstly found that Eiben's opinions could not be based on his 2005 inspection because he never inspected the roof as it existed at the time of plaintiff's injury, since the entire roof was replaced in 2000, prior to his inspection. We agree.

Eiben's inspection occurred on September 20, 2005, six years and eight months after plaintiff's fall. It is undisputed that in 2000, after the time of plaintiff's injury, an entirely new roof was installed over the building. The post-2000 roof was constructed as one continuous structure that extended over the porch and contained no gaps. Any opinion based upon Eiben's inspection of a roof that was entirely different than the roof as it existed at the time of plaintiff's injury would be speculative.

Despite the foregoing, plaintiff argues that Eiben's opinions could be based on his 2005 inspection, because Eiben focused on the slopes and angles of the roof to formulate

15

his opinions. On appeal, plaintiff argues that although the roof had been entirely redone in 2000, the slopes and angles of the roof in 2005 were the same as the slopes and angles of the roof at the time of plaintiff's injury. However, plaintiff does not cite to anything in the record and does not point to the testimony of a single witness that shows that the slopes and angles of the 2005 roof and the roof as it existed at the time of plaintiff's injury were the same. This court's own review of the record on appeal does not reveal any.

"Testimony based on an inspection after the event in question is not competent unless evidence is also introduced to show that the conditions inspected had remained unchanged in the interim." *La Salle National Bank v. Feldman*, 78 Ill. App. 2d 363, 372 (1966). Since there is a complete lack of any such evidence, plaintiff's argument must fail.

As noted, Eiben also criticized the "peel and stick" repairs made to the roof in 1997. Eiben opined that an unnatural accumulation of ice might have occurred on the third-floor porch because the "peel and stick" repairs were insufficient to remedy the dangerous condition caused by the absence of flashing between the masonry and wooden roofs, as they existed at the time of plaintiff's injury. However, for the reasons stated above, Eiben's opinion that the insufficient repairs caused an unnatural accumulation of ice on the third-floor porch cannot be based on his 2005 inspection. Eiben himself conceded that he never observed the "peel and stick" repairs, as an entirely new roof was installed in 2000, prior to his inspection.

Plaintiff then argues that Eiben's first opinion that water had leaked through a gap between the masonry and porch roof was based on a sufficient factual basis, because the opinion was based on his observation of water stains on the underside of the porch roof. We disagree. Eiben did not reference any industry standards to formulate his opinion. Although he stated that testing could have been conducted to determine the precise age of the water stains, he conducted no such testing, and stated that he had no way of knowing when the water damage occurred.

Nor could Eiben's opinion that an unnatural accumulation of ice occurred on the third-floor porch because of a leak between the gap of the masonry and porch roofing be based upon any of the depositions that Eiben reviewed in preparation for his own deposition. When asked if he had relied on any depositions to formulate his opinion, Eiben stated that several depositions "were consistent with" his opinion but that he had not relied upon them. Eiben specifically stated that he reviewed several deposition the night before his own deposition, but had formulated his opinion well in advance of his review of those depositions.

As noted, Eiben's alternative opinion was that the unnatural accumulation of ice on plaintiff's porch was caused by the roof's inadequate drainage system. Eiben also stated that "ice damming" in conjunction with the building's inadequate drainage system may have caused an unnatural accumulation of ice on the third-floor porch.

Before proceeding with an examination of the factual basis for Eiben's alternative opinion, we note that plaintiff may have waived his contentions regarding Eiben's second

17

opinion on appeal because he agreed at the trial level that Eiben could not testify regarding the drainage system, specifically the building's gutter system. In plaintiff's counsel's words, Eiben could not testify regarding the drainage system because "the water never reached the gutters."

Under the " 'doctrine of invited error,' " a party may not request to proceed in one manner and then later contend on appeal that the course of action was in error. *People v. Harvey*, 211 Ill. 2d 368, 385 (2004), quoting *People v. Carter*, 208 Ill. 2d 309, 319 (2003) . To permit a party to use, as a vehicle for reversal, the exact action which it procured in the trial court " 'would offend all notions of fair play' " and encourage duplicity by litigants. *Harvey*, 211 Ill. 2d at 385, quoting *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001). Thus, when a party "procures, invites or acquiesces" to a trial court's evidentiary ruling, even if the ruling is improper, he cannot contest the ruling on appeal. *People v. Bush*, 214 Ill. 2d 318, 332 (2005).

We will nevertheless examine the factual basis for Eiben's alternative opinion.

As noted, Eiben was "very critical" of the drainage system and the way it was maintained. However, he offered no explanation as to why the system was inadequate.

Eiben stated that the roof as it existed at the time of plaintiff's injury was poorly designed and was susceptible to "ice damming." In forming his alternative opinion, Eiben did not review any of the building's blueprints. He did not pour water on the roof and did not observe any drainage patterns. He did not measure the roof's dimensions, slopes, or overhangs. He stated that the building had been cited for inadequate heat in the

past, and that inadequate heat leads to uneven thermal transmission, which in turn leads to "ice damming." However, Eiben did not know if the citations were issued at the time of plaintiff's fall or if the inadequate heating conditions had been remedied prior to plaintiff's fall. He stated that one of the depositions that he had reviewed "was consistent" with "ice damming," but that he in no way relied upon the deposition to formulate his opinion.

Based upon the foregoing, it is apparent that Eiben's alternatvie opinion also had no factual basis and that the trial court did not abuse its discretion by excluding it from trial.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County. We cannot say that the trial court abused its discretion by barring Eiben's opinions because (1) his opinions were not held to a reasonable degree of architectural or scientific certainty, and (2) the opinions had no factual basis.

Affirmed.

CAHILL, P.J., and GARCIA, J., concur.

# REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
## (Front Sheet to be attached to each Opinion)

Please use the ]
following form: ]

]       **EFRAIN TORRES,**

]

]           **Plaintiff-Appellant,**

]      **v.**

]

]       **MIDWEST DEVELOPMENT COMPANY,**

]

]           **Defendant-Appellee.**

**Complete** ]
 **TITLE** ]
of Case. ]

| | |
|---|---|
| **Docket No.** ] | No. 1-06-3698 |
| ] | Appellate Court of Illinois |
| **COURT** ] | First District, First Division |
| ] | |
| ] | MAY 19, 2008 |
| **Opinion Filed** ] | (Month, Day and Year) |

]

**JUSTICES** ] JUSTICE ROBERT E. GORDON delivered the opinion of the court.

] CAHILL, P.J., and GARCIA, J., concur.

**APPEAL from the** ] Lower Court and Trial Judge(s) in form indicated
**Circuit Court** ] in margin:
**of Cook County;** ] Appeal from the Circuit Court of Cook County.
**the Hon:**_____ ]
**Judge Presiding** ] Honorable Cheryl A. Starks, Judge Presiding.

]

**For APPELLANTS** ]Indicate if attorney represents APPELLANTS or
**John Doe of** ]APPELLEES and include attorneys of counsel.
**Chicago.** ]Indicate the word NONE if not represented.
**For APPELLEES,** ]-----------------------------------------------------------------------------

**Smith and** ]    **Brustin & Lundblad, Ltd.**
**Smith, of** ]    **Chicago, Illinois  60603**
**Chicago.** ]    **Attorneys for Appellant**
**Brown,** ]    **Attn: Marvin A. Brustin; Milo W. Lundblad; and Jennifer M. Hill**
**of Counsel.** ]       **OF COUNSEL**

]

]

]

**Also add atty.**] **Johnson and Bell**
**for third party** ]    **Chicago, Illinois  60603**
**appellants** ]    **Attorneys for Appellee**
**or appellees.** ]    **Attn: Scott W. Hoyne and Jonathan W. Goken**
]       **OF COUNSEL**

]

]

_____ ( U S E   R E V E R S E   S I D E   I F
NEEDED_____