2022 IL App (1st) 220100

No. 1-22-0100

Opinion filed September 29, 2022

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF CANDICE G. POULSOM, n/k/a/ Candice G. Merritt, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Petitioner-Appellee and Cross-Appellant, | ) ) | |
| and | ) | No. 92 D 3738 |
| | ) | |
| ROBERT C. POULSOM, | ) | |
| | ) | Honorable |
| Respondent-Appellant and Cross-Appellee. | ) ) | Lori Rosen, Judge, presiding. |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Hoffman and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     Petitioner, Candice G. Merritt, and respondent, Robert C. Poulsom, were married on March 15, 1968, and the marriage was dissolved by an agreed judgment entered on February 24, 1995. On February 2, 2021, Merritt filed a motion for enforcement of judgment for dissolution of marriage in the circuit court. Merritt specifically sought enforcement of two provisions in the marriage settlement agreement, one pertaining to the sale of the marital home, which was supposed to occur in 1999, and the other requiring Poulsom to pay her $50,946, which was to be paid within

30 days of the date the judgment was entered. The trial court denied Merritt's requested relief regarding the sale of the home, but the court granted Merritt the requested relief on the claim that she was due the money owed. Each party appeals the judgment adverse to them in the trial court.

¶ 2    For the reasons that follow, we affirm the judgment of the circuit court denying Merritt's request that Poulsom be forced to sell the marital home. We reverse the trial court's judgment ordering Poulsom to pay Merritt $50,946.[1]

¶ 3                                    I. BACKGROUND

¶ 4    The parties' agreed judgment for the dissolution of their marriage contained two provisions at issue here. First, the agreement required that the marital home be placed on the market for sale on or before March 1, 1999. The delay between the February 1995 judgment and sale date was to allow the couple's youngest child to live in the residence until he turned 18. Merritt was to receive 60% of the net proceeds from the sale or $96,054, whichever was greater. Second, Poulsom was to pay Merritt $50,946 within 30 days of the February 24, 1995, judgment.

¶ 5    On February 2, 2021, Merritt filed a motion to enforce the February 1995 judgment. The first count sought to force Poulsom to sell the marital residence. The motion alleged that Poulsom still lived in the residence, and it had never been placed on the market for sale. The motion requested a court order compelling Poulsom to immediately place the marital residence for sale. Upon closing, the motion sought 60% of the net proceeds, calculated as the contracted sale price less customary closing costs and $87,422, which was the stated mortgage amount as of March 1, 1995. The second count sought to force Poulsom to pay the $50,946, as ordered in the February

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

1995 agreed judgment. The motion alleged that Poulsom never made the payment. The motion also sought attorney fees and costs because Poulsom's failure to pay was without compelling cause or justification.

¶ 6     Poulsom filed two pleadings in response to the motion to enforce. First, Poulsom filed a motion to strike Merritt's motion because it was outside the statute of limitations. Poulsom argued that if the motion to enforce was treated as a motion to enforce a written agreement, it was time-barred as outside the 10-year limit set out in section 13-206 of the Code of Civil Procedure (Code) (735 ILCS 5/13-206 (West 2020)). Alternatively, if the motion was considered a motion to revive the judgment, it was barred by the 20-year limit set out in section 13-218 of the Code (*id.* § 13-218).

¶ 7     Second, Poulsom filed a response to the motion to enforce. Poulson claimed that he had paid Merritt $115,800 in 1999 in exchange for Merritt signing a quitclaim deed. Poulsom also alleged that he paid Merritt the full $50,946 in 1995. Poulsom requested that the court deny Merritt the relief she requested in both counts of her motion to enforce.

¶ 8     Prior to the hearing on Merritt's motion to enforce, the trial court denied Poulsom's motion to strike. The trial court also initially limited the evidentiary hearing to testimony from Merritt and Poulsom, along with any documentary exhibits attached to the motion to enforce and the response. Poulsom filed a motion to modify the trial court's order limiting the evidence. Poulsom sought to present a handwriting expert to establish that Merritt's signature on the quitclaim deed was genuine. Poulsom also sought to present the testimony of Joyce Brackett (Joyce), who notarized the quitclaim deed and would testify that she personally witnessed Merritt sign the quitclaim deed. Poulsom argued that the evidence was necessary due to the loss of other probative evidence because of the passage of time. The trial court denied the motion in total.

¶ 9 Merritt testified that she was 72 years old and currently lived in Florida. Merritt divorced Poulsom in February 1995 and moved to Indiana later that year. In 1999, Merritt moved to Florida with her husband Harlie Merritt. Merritt testified she never returned to Illinois between her move to Indiana in 1995 and 1999, despite having a minor child in Illinois during that time. Merritt explained that the minor child would visit her outside of Illinois. Merritt testified that she did not initiate any action to force the sale of the house in 1999 because she was busy selling her house in Indiana and moving to Florida. Merritt did not initiate any action prior to 2021 because interactions with Poulsom were "never easy" and she was "having too much fun" and "didn't want to get bogged down."

¶ 10 Merritt testified that the marital house was never sold, the divorce decree was never amended to allow Poulsom to buy her out, and the two never had an out-of-court agreement that Poulsom would buy her out. Merritt never signed a quitclaim deed and never received a check that appeared to be a buyout. Joyce was the widow of Poulsom's business partner Robert Brackett (Robert) and could be considered Poulsom's friend. Merritt had never seen the quitclaim deed that purported to include her signature. Merritt also testified that Poulsom never paid her the $50,946 that was due within 30 days of the February 1995 judgment date.

¶ 11 Poulsom testified that he paid Merritt $50,945.71 on March 24, 1995. The money came from an inheritance that was held in an account at Northern Trust Bank. Poulsom paid Merritt with two cashier's checks, one for $47,000 and another for $3,945.71. In the preceding 26 years Merritt had never mentioned not receiving the money provided for in the settlement agreement. According to Poulsom, he and Merritt agreed that he would buy her 60% stake in the marital residence to avoid having to place the property on the market. Merritt agreed that Poulsom would refinance the mortgage and pay her out of the proceeds. In return, Merritt signed a quitclaim deed transferring

her interest in the property to Poulsom. Merritt signed the quitclaim deed in front of three people: Poulsom, Robert, and notary Joyce. A week later Poulsom and Merritt met for the closing at Regional Mortgage Center in Schaumburg. Merritt received a check at the closing. Merritt never mentioned the non-sale of the marital residence to Poulsom in the period between 1999 and 2021. On cross examination, Poulsom agreed that he had no documentation demonstrating that Merritt received a check worth 60% of the value of the marital residence. Poulsom testified that he had very few documents from the 1999 refinance because he typically purged documents after 10 years. Poulsom attempted to recover records through the mortgage company and bank, but those entities did not retain records that far back.

¶ 12    Based on Poulsom's testimony that he could not obtain documents to prove that Merritt had been involved in the refinance process, the trial court allowed Poulsom to call Joyce as a witness. Joyce testified that she notarized the quitclaim deed between Merritt and Poulsom. Joyce saw Merritt sign the deed in Poulsom's breakfast room. Joyce testified that Poulsom had been her boss at both his law office and periodontist office. Joyce was married to Poulsom's business partner and frequently had meals with Poulsom. Poulsom was still Joyce's dentist for checkups.

¶ 13    The trial court found parts of each party's testimony credible. The trial court found Poulsom's testimony, supported by Joyce's testimony, that Merritt quitclaimed her interest in the marital residence in exchange for approximately $115,000 more credible than Merritt's testimony that she never received a check in exchange for the quitclaim deed and failed to pursue the sale of the marital residence for decades. However, the trial court found Merritt's testimony that she did not receive the $50,946 within 30 days of the judgment more credible than Poulsom's testimony, unsupported by any other evidence, that he issued two checks to Merritt. The trial court also

rejected Poulsom's statute of limitations arguments, as well as his argument that Merritt's requested relief regarding the marital residence was barred by estoppel.

¶ 14     The trial court entered the final judgment on January 18, 2022. No posttrial motions were filed. Poulson filed his notice of appeal on January 24, 2022. Merritt filed a notice of cross-appeal on February 10, 2022.

¶ 15                              II. ANALYSIS

¶ 16     The trial court's resolution of both counts of Merritt's motion to enforce is at issue between the appeal and cross-appeal. We start our analysis with the claim that Poulsom never paid Merritt the $50,946, as required by the February 1995 judgment. Poulsom argues that Merritt's claim was time-barred as it occurred 26 years after the judgment was entered. Poulsom also argues that the trial court's finding that he did not pay Merritt the money owed was against the manifest weight of the evidence. Merritt responds that Poulsom has forfeited his argument regarding the statute of limitations. Merritt also argues that, based on the favorable standard of review, we should affirm the trial court's finding that Poulsom never made the necessary payment because the finding was based on the trial court's assessment of each of their testimony.

¶ 17     We conclude that Merritt's claim that she was owed $50,946 was time-barred. We also reject Merritt's appellate argument that Poulsom forfeited the limitations defense by labeling his motion as a motion to strike as opposed to a motion to dismiss. Because the trial court should have dismissed Merritt's claim that she was owed $50,946 from the February 1995 judgment as time-barred, we reverse that portion of the trial court's judgment.

¶ 18     Initially, we reject Merritt's argument that Poulsom forfeited review of the limitations defense by failing to correctly label his motion and the statutory basis for his request in the trial court. Merritt cites several cases for the proposition that a motion in the trial court should clearly

state the statutory basis for the requested relief and that an answer and motion to dismiss should not be on file simultaneously. However, none of the cases support a conclusion on appeal that an issue, such as statute of limitations, is waived for failing to correctly label a motion in the trial court. Here, where the statute of limitations defense was presented to the trial court, and no objection was made to the form of Poulsom's motion, Poulsom adequately preserved the issue for appellate review. See *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994) (explaining that where a motion is not labeled according to the statutory basis for dismissal, a reviewing court will "typically review the nondesignated motion according to its grounds, its requests, or its treatment by the parties and the trial court").

¶ 19    Section 12-108 of the Code provides that "no judgment shall be enforced after the expiration of 7 years from the time the same is rendered, except upon the revival of the same by a proceeding provided by Section 2-1601 of this Act." 735 ILCS 5/12-108 (West 2020). Section 2-1602 of the Code provides that

> "a judgment may be revived by filing a petition to revive the judgment in the seventh year after its entry, or in the seventh year after its last revival, or in the twentieth year after its entry, or at any other time within 20 years after its entry if the judgment becomes dormant and by serving the petition and entering a court order for revival as provided in the following subsections." *Id.* § 2-1602.

Finally, section 13-218 of the Code provides: "A petition to revive a judgment, as provided by Section 2-1601 of this Code, may be filed no later than 20 years next after the date of entry of such judgment." *Id.* § 13-218.

¶ 20    Illinois courts have applied the above provisions to money judgments emanating from divorce decrees. See *Atwater v. Atwater*, 18 Ill. App. 3d 202, 208 (1974) (noting that "a decree for

alimony (herein a lump sum settlement) is a money decree and the 20-year statute of limitations applicable to judgments applies"); *In re Marriage of Yakubec*, 154 Ill. App. 3d 540, 544 (1987) ("A divorce decree is a money decree and the 20-year statute of limitations applicable to judgments applies."); *James T. Haddon, Ltd. v. Weiss*, 342 Ill. App. 3d 144, 148-49 (2003) (Section 13-218 of the Code "provides for the revival of a judgment so long as such proceedings are commenced within 20 years from the date of the entry of the underlying judgment, in this case the judgment for dissolution of marriage."). Based on this clear and uncontroverted authority, the money judgment set out in the marital settlement agreement was subject to the 20-year limitations period. Thus, we conclude that the trial court should have granted Poulsom's motion and dismissed the count requesting enforcement of the February 1995 $50,946 money judgment. Accordingly, we necessarily reject Merritt's claim that the trial court erred in not awarding attorney fees based on the motion to enforce that judgment

¶ 21    Next, we address the timeliness of Merritt's claim to the greater of 60% of the net proceeds of the sale of the marital residence or $96,054. This court has held that the reference to "judgment" in sections 12-108 and 2-1602 is limited to "money judgments against judgment debtors." *In re Estate of Pigott*, 2019 IL App (1st) 181716, ¶ 17. In *Pigott*, this court analyzed whether a provision in a marital settlement agreement was subject to the 20-year limitations period. *Id.* ¶ 14. The provision required each party to the divorce to execute a will bequeathing at least 50% of his or her estate to the parties' six children in equal shares. *Id.* ¶ 7. There was also an enforcement provision that granted the children "a provable, liquidated claim, lien and charge against the estate of [the husband] and [wife] for such amount as a child would have received had such deceased party made a will as hereinabove required." (Internal quotation marks omitted.) *Id.*

¶ 22    The husband failed to fulfill that obligation, and 35 years after the judgment was entered on the marital settlement agreement, the parties' six children filed claims against the husband's estate seeking one-sixth each of 50% of his estate. *Id.* ¶¶ 8-9. This court concluded that the children's claims were not time-barred because no money judgment had been entered against the husband. *Id.* ¶ 18. Instead, the provision was injunctive in nature, and "an injunctive order remains enforceable after 20 years, even in the absence of a revival action, until it is set aside on appeal or otherwise vacated or modified by the court that granted it." *Id.* ¶ 20. This court reasoned that the provision requiring the husband to create a particular will was injunctive because it required him "to perform a positive act, *i.e.*, to make a will bequeathing at least 50% of his net estate" to the parties' six children. *Id.* ¶ 21. Thus, the children's claims were not time-barred under the 20-year limitations period. *Id.* ¶ 22; see *In re Marriage of Peck*, 2019 IL App (2d) 180598, ¶¶ 14, 17 (holding that a trial court's order awarding the parties' equal shares of the equitable interest in property was not a judgment subject to the revival provision in section 2-1602).

¶ 23    The Illinois Supreme Court, in the context of Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), which provides for interlocutory appeals of court orders granting or refusing an injunction, broadly construed the meaning of injunction as "a judicial process operating in personam and requiring [a] person to whom it is directed to do or refrain from doing a particular thing." (Internal quotation marks omitted.) *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 221 (2000); see also *In re A Minor*, 127 Ill. 2d 247, 262 (1989) (explaining that injunctive orders "affect the relationship of the parties in their everyday activity apart from the litigation"). The court's order in this case, premised on the parties' agreement, shares characteristics of both a money judgment and an injunctive order. The order provided a definitive baseline amount, $96,054, that Merritt would receive after the sale of the marital residence. The alternative payment would be

60% of the net proceeds from the sale of the marital residence, if greater than $96,054. The order also has injunctive characteristics, as the parties were ordered to agree upon a real estate agent, agree to a sale price, and, if unable to agree to a sale price, to use the average of three appraisals as the initial price. The parties were then ordered to reduce the sale price of the home incrementally if the home did not sell within a specified period. Thus, the parties were jointly ordered to perform numerous positive acts leading up to the sale of the marital residence. We conclude that the order at issue is an injunction, and not a money judgment, because it required Poulsom to perform several positive acts to sell the residence, which necessarily must occur before the parties could determine the amount owed to Merritt. We conclude that Merritt's requested relief regarding the marital residence is not time-barred.

¶ 24    The trial court here found that Poulsom satisfied the judgment by paying Merritt $115,800 for her interest in the marital residence. "When a trial court makes a finding by a preponderance of the evidence, this court will reverse that finding only if it is against the manifest weight of the evidence." *Best v. Best*, 223 Ill. 2d 342, 348-49 (2006). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Id.* at 350. "Under the manifest weight standard, we give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses." *Id.*

¶ 25    Here, the trial court's finding was not against the manifest weight of the evidence. Both Poulsom and Joyce testified that Merritt signed a quitclaim deed to the marital residence on May 20, 1999. Poulsom detailed the process to refinance and buy out Merritt, including witnessing Merritt sign the quitclaim deed, her attendance at the closing, and her acceptance of a check at the closing. Poulsom explained that he refinanced through Regional Mortgage Center. He received

$182,450, which went to pay off the old mortgage, pay the closing costs, and the balance ($115,800) went to Merritt for her 60% share of the marital residence. Poulsom's detailed and partially corroborated testimony that he paid Merritt for her 60% interest in the marital residence in May 1999 was only rebutted by Merritt's general testimony that she never signed the quitclaim deed, that she had returned to Illinois only once between 1995 and 1999, despite having a minor child in Illinois at the time, and that she declined to pursue any relief over the previous 22 years because she was "having too much fun." The trial court's decision to credit Poulsom and Joyce over Merritt was not unreasonable or arbitrary.

¶ 26　We also reject Merritt's argument that the trial court violated her right to due process by not allowing her handwriting expert to testify about the genuineness of her signature on the quitclaim deed. Without delving into the constitutional right at issue and the appropriate standard for appellate review of an evidentiary decision, we reject Merritt's argument because this issue was not preserved below.

¶ 27　"When a trial court refuses evidence, no appealable issue remains unless a formal offer of proof is made." *People v. Peeples*, 155 Ill. 2d 422, 457 (1993). "The purpose of an offer of proof is to inform the trial court, opposing counsel, and a court of review of the nature and substance of the evidence sought to be introduced." *Biundo v. Bolton*, 2020 IL App (1st) 191970, ¶ 19. "Where it is not clear what a witness would testify to, or what the basis for his testimony is, the offer of proof must be considerably detailed and specific, so that a reviewing court can thereby review whether the exclusion was proper." *Torres v. Midwest Development Co.*, 383 Ill. App. 3d 20, 26 (2008).

¶ 28　Here, Merritt's trial counsel only generally referenced the potential for a handwriting expert. Counsel stated before the parties argued Poulsom's motion to strike that, if the case went

forward, there would be "handwriting experts and discovery and all of that." Later Merritt's counsel mentioned that there would be "dueling handwriting experts." That was the extent of the presentation below from Merritt's side. Merritt never indicated the expert's identity or the basis and substance of the expert's testimony. Without any of that information, we cannot review Merritt's argument that the trial court erred in excluding the handwriting expert evidence.

¶ 29                                    III. CONCLUSION

¶ 30     For the foregoing reasons, we affirm the judgment of the circuit court in part and reverse in part.

¶ 31     Affirmed in part and reversed in part.

No. 1-22-0100

---

***In re Marriage of Poulsom*, 2022 IL App (1st) 220100**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 92-D-3738; the Hon. Lori Rosen, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Richard M. Kates, of Winnetka, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Paul L. Feinstein, of Paul L. Feinstein, Ltd., of Chicago, for appellee. |

---