DORA ANN SETZEKORN, Widow of Henry Setzekorn, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Judy Barr-Topinka, State Treasurer and *ex officio* Custodian of the Rate Adjustment Fund, *et al.*, Appellees).

Fifth District (Industrial Commission Division) No. 5—03—0695WC

Opinion filed December 2, 2004.

Harold B. Culley, Jr., of Culley & Wissore Lawyers, of Raleigh, for appellant.

Kenneth F. Werts and Julie A. Webb, both of Craig & Craig, of Mt. Vernon, for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On December 26, 1997, claimant, Dora Ann Setzekorn, the surviving spouse of Henry Setzekorn (decedent), filed an application for adjustment of claim pursuant to the Workers' Occupational Diseases Act (Act) (820 ILCS 310/1 through 27 (West 1996)), seeking benefits from Freeman United Coal Mining Company (Freeman). After a hearing, the arbitrator denied claimant benefits. On review, the Industrial Commission (Commission) affirmed and adopted the arbitrator's decision. Claimant sought judicial review of the Commission's decision in

the circuit court of Franklin County, which confirmed the Commission's decision.

Claimant appeals, arguing that (1) the Commission erred by (a) "failing to apply *res judicata* to the issues already determined" in the former case, (b) "failing to take judicial notice of the Federal Register," and (c) "ignoring the statutory evidentiary presumption concerning pneumoconiosis deaths," and (2) the Commission's finding that "[t]he death of *** decedent was not causally connected to his exposure to the hazards of an occupational disease" is against the manifest weight of the evidence. We affirm the circuit court's order confirming the Commission's decision.

Decedent worked as a coal miner for approximately 48 years. He last coal mined on December 26, 1980. In approximately 1985, decedent filed an application for adjustment of claim under the Act asserting that he suffered "an occupational disease arising out of and in the course of his employment." On November 2, 1995, the Commission found decedent disabled and awarded him benefits representing 12.5% loss of a man as a whole.

On November 25, 1992, the arbitrator issued a decision in which he found decedent suffered "simple coal workers' pneumoconiosis [CWP]." The arbitrator noted decedent's testimony that "[h]e stopped smoking in 1958. Prior to said time he smoked 1-1/2 packs of cigarettes a day for 25 years." Dr. Edward Campbell found "no impairment in pulmonary function." Dr. Parviz Sanjabi found pulmonary function "basically within the normal range." Dr. Susan Marshall found "no overall obstruction and the presence of borderline small airways obstruction." Dr. Marshall noted that "[t]hese small airways changes are most likely due to cigarette smoking in the past." Dr. William Houser found "evidence of *** mild obstructive impairment *** caused by working in a dusty environment for 28-1/2 years breathing coal and rock dust and caused by his previous cigarette smoking." The arbitrator found decedent disabled and awarded him benefits representing 12.5% loss of a man as a whole.

On November 23, 1993, the Commission affirmed and adopted the arbitrator's decision. On July 15, 1994, the circuit court of Franklin County "remanded to the *** Commission for further assessment of the damage to [decedent's] earning capacity caused by his occupational disease." On November 2, 1995, the Commission "reaffirm[ed] its prior conclusion" noting decedent retired approximately 15 years earlier and had not sought employment.

In the present case, decedent sought treatment at Pickneyville Community Hospital on April 16, 1995. He complained of "[c]ongestion for approximately [four] weeks." Decedent experienced "worsen-

ing dyspnea" and was transferred to Missouri Baptist Medical Center on April 21, 1995. Dr. Rhody Eisenstein noted in a discharge summary that decedent was treated for pneumonia and chronic obstructive pulmonary disease (COPD). In addition, a "chest computed tomography scan" suggested a mass and liver metastases. A "computed tomography scan guided needle biopsy of the left lung mass revealed adenocarcinoma." Decedent was not a "good candidate" for radiation or chemotherapy. He suffered a "far advanced malignancy." He was discharged on May 4, 1995, with arrangements for "home hospice care."

Decedent died on May 28, 1995. A death certificate identified the cause of death as "respiratory arrest due to or as a consequence of metastatic lung cancer."

On December 26, 1997, claimant filed an application for adjustment of claim under the Act asserting "[d]eath caused in whole or in part by inhalation of coal mine dust including but not limited to coal dust, rock dust, fumes [and] vapors."

Dr. William Houser testified on August 28, 2000, that he is a board-certified pulmonary specialist. He had examined decedent on June 12, 1990. Dr. Houser reviewed medical records concerning decedent's diagnoses, treatment, and death at the request of claimant. He believed decedent suffered from emphysema, CWP, chronic bronchitis, and COPD. Although decedent smoked approximately "a pack a day for 16 years," Dr. Houser believed decedent's smoking was too remote to have been "a factor." Dr. Houser believed decedent quit smoking in approximately 1950. Dr. Houser opined that the various diagnoses were related to decedent's employment. Although Dr. Houser acknowledged that "[t]he general consensus is that exposure to coal mine dust is not associated with an increased risk of lung cancer," he believed that decedent's "obstructive pulmonary defect was a causative factor in his lung cancer and death."

Dr. Joseph Renn testified on May 10, 2001, that he is a physician board certified in internal medicine and pulmonary disease. Dr. Renn reviewed medical records concerning decedent's diagnoses, treatment, and death at the request of Freeman. Dr. Renn believed decedent's smoking history to be "significant enough to have resulted in a lung cancer and significant enough to have caused him to have the bullous emphysema and the chronic bronchitis."

Dr. Renn referenced multiple studies "done on coal miners and whether or not there is an increase in lung cancer." Dr. Renn offered:

"Well, what is significant about them is that they've studied both smoking and nonsmoking coal miners and found that there was no greater incidence among the coal miners, either smoking or

nonsmoking, than there was in the general either smoking or nonsmoking population. And, therefore, if the incidence is not increased then coal mine dust did not have an additive effect or even a synergistic effect."

Dr. Renn opined "the cause of [decedent's] demise was the metastatic adenocarcinoma of the lung and its effect on his various organ systems." Further, Dr. Renn stated that "[t]here was no other cause that either was a contributing factor or even a significant cause of that method of his demise."

Following the hearing, the arbitrator issued a decision in which he found decedent's death "not causally connected to his exposure to the hazards of an occupational disease." The Commission affirmed and adopted the arbitrator's decision. Claimant sought judicial review of the Commission's decision in the circuit court of Franklin County. The circuit court confirmed the Commission's decision finding that it was not against the manifest weight of the evidence. This appeal followed.

Claimant first argues that the Commission erred by "failing to apply *res judicata* to the issues already determined" in the former case.

■ Section 19(j) of the Act provides:

"Whenever in any proceeding testimony has been taken or a final decision has been rendered, and after the taking of such testimony or after such decision has become final, the employee dies, then in any subsequent proceeding brought by the personal representative or beneficiaries of the deceased employee, such testimony in the former proceeding may be introduced with the same force and effect as though the witness having so testified were present in person in such subsequent proceedings and such final decision, if any, shall be taken as final adjudication of any of the issues which are the same in both proceedings." 820 ILCS 310/19(j) (West 1996).

■ Claimant argues in her initial brief that the Commission "previously awarded decedent benefits *** due to occupational lung disease." Therefore, "the conclusion that mining caused obstructive lung disease was litigated."

In the former case, the Commission found decedent suffered from an occupational lung disease in the form of CWP and awarded decedent benefits. The Commission did not find decedent suffered from "obstructive lung disease." Drs. Campbell and Sanjabi found no impairment. Dr. Marshall found "borderline" obstruction likely due to cigarette smoking. Only Dr. Houser found "evidence of *** mild obstructive impairment *** caused by working in a dusty environment for 28-1/2 years breathing coal and rock dust and caused by his previous cigarette smoking."

Claimant next argues that the Commission erred by "failing to take judicial notice of the Federal Register and *** of the evidence indicating that coal mine dust causes obstruction and impairing emphysema." Claimant cites portions of the Federal Register. The record does not show that the Commission failed to take judicial notice of the portions of the Federal Register claimant cited. The Commission's decision need not recite all of the underlying evidence. *Swift & Co. v. Industrial Comm'n*, 150 Ill. App. 3d 216, 221, 501 N.E.2d 752, 755 (1986). A presumption exists that the Commission considered all evidence in reaching its decision. *Swift*, 150 Ill. App. 3d at 221, 501 N.E.2d at 755.

Claimant next argues that the Commission erred by "ignoring the statutory evidentiary presumption concerning pneumoconiosis deaths."

Section 1 of the Act provides:

"If a deceased miner was employed for 10 years or more in one or more coal mines and died from a respirable disease there shall, effective July 1, 1973, be a rebuttable presumption that his or her death was due to pneumoconiosis." 820 ILCS 310/1(d) (West 1996).

Claimant must show that the disease which caused decedent's death was a "respirable disease" and that the disease reported suggests a reasonable possibility of death due to pneumoconiosis. Claimant states that "there can be no question that lung cancer is a respirable disease." In support of her statement, claimant cites to a definition of occupational disease referenced in the Illinois Pension Fund (40 ILCS 5/6—112 (West 2002)) and specific to firemen, and to a section of the Civil Administrative Code of Illinois, Department of Public Health, entitled, "Cancer, heart disease, and other chronic diseases" (20 ILCS 2310/2310—355 (West 2002)). Claimant concludes, "since [claimant] had lung cancer and CWP, there is a presumption that his death was due to CWP."

The Act does not define "respirable disease." Further, the Act does not provide that lung cancer is a chronic lung disease as a matter of law. We note decedent's lung cancer was diagnosed on April 28, 1995, and decedent died on May 28, 1995. Claimant failed to show that the disease which caused decedent's death was a "respirable disease" and that the disease reported suggests a reasonable possibility of death due to pneumoconiosis.

Moreover, the death certificate identified the cause of death as "respiratory arrest due to or as a consequence of metastatic lung cancer." Dr. Houser acknowledged that "[t]he general consensus is that exposure to coal mine dust is not associated with an increased risk of lung cancer." Dr. Renn believed decedent's smoking history to

be "significant enough to have resulted in a lung cancer and significant enough to have caused him to have the bullous emphysema and the chronic bronchitis." Dr. Renn believed "the cause of [decedent's] demise was the metastatic adenocarcinoma of the lung and its effect on his various organ systems." Further, Dr. Renn stated that "[t]here was no other cause that either was a contributing factor or even a significant cause of that method of his demise." A rebuttable presumption is one that "may be overcome by the introduction of contrary evidence." Black's Law Dictionary 1224 (8th ed. 2004). The Commission did not "ignor[e] the statutory evidentiary presumption concerning pneumoconiosis deaths."

Claimant next argues that the Commission's finding that "[t]he death of *** decedent was not causally connected to his exposure to the hazards of an occupational disease" is against the manifest weight of the evidence.

It is the Commission's province to judge the credibility of witnesses, to draw reasonable inferences from the testimony and to determine what weight the testimony is to be given. *Paganelis v. Industrial Comm'n*, 132 Ill. 2d 468, 483-84, 548 N.E.2d 1033, 1040 (1989). Further, it is the Commission's province to resolve conflicts in medical evidence. *Amoco Oil Co. v. Industrial Comm'n*, 218 Ill. App. 3d 737, 747, 578 N.E.2d 1043, 1050 (1991). The Commission's decision on a question of fact will not be disturbed unless it is contrary to the manifest weight of the evidence. *Paganelis*, 132 Ill. 2d at 484, 548 N.E.2d at 1040.

Where the inferences drawn by the Commission are reasonable, a court of review will not discard them merely because other inferences could be drawn from the evidence. *Warren v. Industrial Comm'n*, 61 Ill. 2d 373, 376, 335 N.E.2d 488, 490 (1975). It is not the prerogative of the reviewing court to reweigh the evidence and substitute its judgment for that of the Commission. A reviewing court is not the trier of fact. Likewise, it is for the Commission to decide which of two conflicting opinions should be accepted. *Material Service Corp. v. Industrial Comm'n*, 97 Ill. 2d 382, 387, 454 N.E.2d 655, 657 (1983).

In this case, the Commission affirmed and adopted the arbitrator's decision. The arbitrator noted Dr. Renn's testimony that decedent's "tobacco history was significant enough to result in a lung cancer, bullous emphysema and chronic bronchitis." Dr. Renn concluded that CWP, COPD, and emphysema did not hasten decedent's death. "The cause of his demise was the metastatic adenocarcinoma of the lung and its affect [*sic*] on his various organ systems." Further, the arbitrator noted that Dr. Houser "admitted that the general consensus is that exposure to coal mine dust is not associated with an increased

risk of lung cancer." The Commission's finding that "[t]he death of *** decedent was not causally connected to his exposure to the hazards of an occupational disease" is not against the manifest weight of the evidence.

We affirm the circuit court's order confirming the Commission's decision.

Affirmed.

HOFFMAN, CALLUM, HOLDRIDGE, and GOLDENHERSH, JJ., concur.