960 N.E.2d 587 (2011)
355 Ill. Dec. 705
William GROSS, Appellant,
v.
ILLINOIS WORKERS' COMPENSATION COMMISSION et al. (Freeman United Coal Mining Company, Appellees).
No. 4-10-0615 WC.
Appellate Court of Illinois, Fourth District.
October 6, 2011.
*588 Harold B. Culley, Jr., Bruce R. Wissore (argued), Culley & Wissore, Raleigh, for William Gross.
Kenneth F. Werts (argued), Julie A. Webb, Craig & Craig, Mt. Vernon, for Workers' Compensation Commission.

*589 OPINION
Justice STEWART delivered the judgment of the court, with opinion.
¶ 1 This is an appeal of the denial of a claim for benefits under the Workers' Occupational Diseases Act (Occupational Diseases Act) (820 ILCS 310/1 et seq. (West 2008)). The arbitrator determined that the claimant, William Gross, was not exposed to an occupational disease that arose out of and in the course of his employment with Freeman United Coal Mining Company (the employer). The Illinois Workers' Compensation Commission (Commission) affirmed and adopted the arbitrator's decision, and the circuit court of Sangamon County confirmed the Commission's decision. The claimant appeals, arguing that the Commission's decision that his condition of chronic obstructive pulmonary disease (COPD) did not arise out of and in the course of his employment is against the manifest weight of the evidence. We reverse.

¶ 2 BACKGROUND
¶ 3 Although the claimant originally asserted potential claims for coal workers' pneumoconiosis (CWP) and histoplasmosis, he has abandoned those claims in this appeal and has limited our review to his claim for COPD. Accordingly, our statement of facts will include only the evidence pertinent to the issue on appeal.
¶ 4 The claimant, who was 64 years old, filed an application for adjustment of claim on December 5, 2005, alleging that he had been injured by the "[i]nhalation of coal mine dust including but not limited to coal dust, rock dust, fumes and vapors for a period in excess of 39 years." He alleged that his lungs and/or heart were affected and that he suffered from shortness of breath and exercise intolerance. He began working in the coal mines in 1965 at the employer's Fidelity Mine. The claimant worked at the Fidelity Mine until late 1991, when he was laid off. He was recalled to the employer's Industry Mine in March 1992. He worked at the Industry Mine until he was laid off on November 7, 2003, when the Industry Mine closed. The claimant retired in February 2004. Both the Fidelity Mine and the Industry Mine were aboveground coal mines. While working for the employer, the claimant worked as a car rider, driller, wheel oiler, ground man, in the "prep plant," and finally, as an electrician for the final 30 years of his career. In his work as an electrician, he worked in all areas of the mine, including "out in the pit" in order to work on the generators and other electrical equipment. He frequently changed the filters in the electrical room due to the heavy dust.
¶ 5 The claimant testified that he first noticed a change in his breathing around 1999 when working at the Industry Mine. He explained that his work required him to climb up to nine flights of stairs while carrying 20 to 25 pounds of tools. He stated that he had to stop and rest at least twice if climbing to the top of the plant. He testified that there was often so much coal dust blowing around in the area where the coal was loaded that he could not see. On February 1, 2004, the claimant officially retired. He testified that he did not want to retire until he was 65, but he retired when he was 62 because he realized that the employer was not going to call him back to work. At the arbitration hearing on September 23, 2008, he thought he could walk a "mile or more" on level ground on one of his good days. On one of his bad days, he would have to force himself to walk that far. He testified that from 1999, when he first noticed his breathing problems, until the arbitration hearing in 2008, his breathing had become "somewhat worse," "not real bad, but *590 worse." By 2008, on his bad days, his breathing bothered him when he did household chores like the laundry or taking out the trash. He did not climb stairs unless he had to, and he rarely played golf. He explained that he used to walk 18 holes of golf, but could no longer walk 9 holes of golf.
¶ 6 The claimant testified that he had non-insulin-dependent diabetes and had had two previous open heart surgeries. His treating physicians had encouraged him to walk, but he did not walk very often. Instead, he occasionally swam in his daughter's pool. He was not taking any breathing medications at the time of the arbitration hearing. He stated that he smoked approximately one pack of cigarettes per day from 1959 until he quit in 1999. He explained that he quit a couple of times during those years, one time for up to two years, but he did not finally quit smoking permanently until 1999. He had never had a job that did not involve manual labor. He testified that he was no longer physically able do any of his former mining jobs. He had not worked for any employer since he retired and had, had not been hospitalized since 2003.
¶ 7 The parties submitted, as joint exhibits, the claimant's medical records from Marshall Browning Hospital, McDonough District Hospital, Prairie Cardiovascular Consultants, Memorial Medical Center, and Limoine Valley Clinic. Additionally, the claimant submitted the deposition and written report of his expert witness, Dr. William C. Houser. The employer submitted the deposition and written report of its expert witness, Dr. Joseph J. Renn III. Although both parties submitted additional expert testimony pertinent to the claim for CWP, and Dr. Houser and Dr. Renn also testified about CWP, we focus only on the testimony on the claim for COPD.
¶ 8 Dr. Houser, a pulmonary specialist and the medical director of the Deaconess Hospital Black Lung Clinic, examined the claimant at his attorney's request. Dr. Houser is board certified in pulmonary diseases. Dr. Houser examined the claimant on January 10, 2006. His evaluation included documenting the claimant's history with an emphasis on his respiratory symptoms. He reviewed the claimant's smoking history, past and current medications, medical history, drug allergies, family history, and his occupational history. He also performed a complete physical examination. He did not review any of the claimant's treatment records and was not aware of the status of the claimant's lung function before his January 10, 2006, examination.
¶ 9 The claimant had been retired for almost two years when Dr. Houser examined him. The claimant told Dr. Houser that he had been short of breath for about a year before meeting with him, but he did not tell Dr. Houser that he had any difficulty performing his last coal mining job. Dr. Houser stated that deconditioning, heart disease, and significant tobacco use can all cause exertional dyspnea or shortness of breath during exercise. He noted that significant tobacco use is also associated with "arteriosclerotic heart disease," another of the claimant's conditions. Although the claimant experienced shortness of breath, Dr. Houser characterized him as "fairly active." Dr. Houser understood that the claimant was retired and that he did not leave work due to any health concerns or on the advice of a physician.
¶ 10 Dr. Houser's physical examination of the claimant's chest produced no abnormal findings. He performed pulmonary function tests for which he believed the claimant provided "good efforts" and for which he obtained "reproducible results." Those tests indicated "mild airway obstruction" *591 with some, although not significant, "improvement with bronchodilator administration." He testified that the inhalation of coal mine dust over a period of 39 years can result in shortness of breath and obstructive ventilatory abnormalities such as he noted in the claimant.
¶ 11 In his testimony and in his report, Dr. Houser assessed the claimant with mild COPD. He based his diagnosis of COPD on the results of the pulmonary function tests. He opined that the cause of the claimant's COPD was a combination of the claimant's former cigarette smoking and his exposure to coal and rock dust. He testified that exposure to coal dust causes the same type of obstruction seen in pulmonary function testing as cigarette smoking. He stated that he has observed this type of obstruction in individuals who were coal miners who never smoked, as well as smokers who never worked in a coal mine. Finally, he opined that, in an individual with both significant coal mining experience and a significant cigarette smoking history, it is impossible to determine "the relative contribution" of each to the individual's COPD.
¶ 12 He stated that, if the claimant would be exposed to coal dust in the future, it would aggravate his COPD. He noted that the claimant's current condition predisposes him to pulmonary infections, makes recovery from those infections more difficult, and places an extra burden on his heart. Dr. Houser testified that when tobacco use results in damage to a person's respiratory system, the damage is permanent even if the person stops smoking.
¶ 13 Dr. Renn, a pulmonary specialist, board certified in internal medicine, pulmonary diseases, forensic medicine, and a forensic medical examiner, testified that, at the employer's request, he reviewed the claimant's medical records from 1969 through 2005 and Dr. Houser's report and deposition. He did not examine the claimant. Dr. Renn testified that the claimant's cardiopulmonary history revealed that, between 1969 and 2006, the claimant had been evaluated on numerous occasions, had several episodes of bronchitis, and had pneumonia when he was in the military. He listed the claimant's cardiovascular risk factors as including "at least 80 pack years of cigarette smoking," a family history of heart disease, type II diabetes mellitus which had not been well-controlled, "hyperlipidemia, hyperhomocysteinemia, systemic hypertension, obesity and gout." He noted that the claimant had undergone cardiac catheterization on October 16, 2000, which revealed that he had "atherosclerotic coronary vascular disease," for which he had double coronary artery bypass grafting. During the bypass surgery, the claimant also underwent a wedge resection of his lung, due to a nodule in the upper left lobe which had been identified since 1999. Dr. Renn noted that the claimant was again hospitalized on February 5, 2002, with an acute myocardial infarction.
¶ 14 Dr. Renn testified that the claimant's history of heavy smoking "would almost certainly have resulted in various tobacco smoking diseases," including COPD and emphysema. He stated that significant tobacco use is associated with cardiovascular disease, and shortness of breath is associated with cardiovascular disease.
¶ 15 Dr. Renn disagreed with Dr. Houser's conclusion that all of the claimant's pulmonary function testing was valid because he did not believe the results indicated that the claimant had given good effort. He testified that the claimant did not experience a significant change with bronchodilator administration, and he felt that Dr. Houser did not properly conduct the test. He agreed, however, that the portion of *592 the testing he deemed valid suggested a mild obstructive ventilatory defect. He opined that the claimant was a "66-year old who has mild pulmonary emphysema owing to tobacco smoking." Dr. Renn found the claimant's history of tobacco use "more than adequate to have resulted in tobacco-smoke induced diseases." In his report, Dr. Renn stated his opinion as follows:
"It is with a reasonable degree of medical certainty that [the claimant's] pulmonary emphysema resulted from his years of tobacco smoking rather than his exposure to coal mine dust. It is with a reasonable degree of medical certainty that none of the [claimant's] diagnoses were either caused, or contributed to, by his exposure to coal mine dust."
Dr. Renn offered the same opinion during his testimony.
¶ 16 Dr. Renn agreed, however, that pulmonary function tests are global measurements of lung function, which reveal the type and severity of an abnormality, but not its specific etiology. He agreed that the long-term inhalation of coal dust can cause or aggravate obstructive lung disease and that the claimant had sufficient coal dust exposure to cause COPD in a susceptible host. Dr. Renn agreed that coal miners have an increased risk of developing COPD. He acknowledged that it is the position of the United States Department of Labor and the American Thoracic Society that the risk of obstructive lung disease from the inhalation of coal dust is equivalent to the risk from tobacco smoking, but he disagreed that the risks are "equivalent." He agreed, however, that the causes of COPD may be multifactorial, and that the effects of coal dust and cigarette smoking are additive. Dr. Renn also agreed that the effect of cigarette smoking or the inhalation of coal dust, at the cellular level, when either causes obstructive lung disease or emphysema, are for the most part the same. When asked how he could determine that the claimant's COPD was caused solely by cigarette smoking, he stated that his opinion was based on the pattern of pulmonary function testing "associated with tobacco smoking versus the pattern that you would see in coal workers' pneumoconiosis." Dr. Renn did not state that pulmonary function testing would differentiate whether COPD was caused by cigarette smoking rather than coal dust inhalation, and he did not explain how the pattern seen in CWP would reveal the specific etiology of the claimant's COPD.
¶ 17 On October 14, 2008, the arbitrator issued his decision, finding that the claimant was not exposed to an occupational disease that arose out of and in the course of his employment and that his condition of ill-being is not causally connected to his employment. In his decision denying the claimant benefits under the Occupational Diseases Act, the arbitrator provided a detailed analysis of the claimant's medical history and the expert testimony of Dr. Houser and Dr. Renn as it relates to the claimant's claim for CWP but provided no analysis of his COPD claim. The arbitrator gave the opinions of Dr. Renn greater weight than those of Dr. Houser, apparently adopting Dr. Renn's opinion that "none of the [claimant's] diagnoses were either caused, or contributed to, by his exposure to coal mine dust." Based on these findings, the arbitrator denied the claimant's claim for benefits.
¶ 18 On November 25, 2009, the Commission affirmed and adopted the arbitrator's findings and decision without further analysis. On July 26, 2010, the circuit court confirmed the Commission's decision. This appeal followed.

*593 ¶ 19 ANALYSIS
¶ 20 In this appeal, the claimant concedes that the Commission's decision denying his claims for CWP and histoplasmosis is not against the manifest weight of the evidence. He candidly admits that, as to those claims, the Commission was entitled to give greater weight to the opinions of the employer's experts. However, as to his claim that his exposure to coal dust contributed to his COPD, he asserts that the decision of the Commission is against the manifest weight of the evidence. He argues that the Commission erred in accepting the opinion of Dr. Renn that coal dust exposure did not contribute to cause his COPD when Dr. Renn failed to give an adequate explanation of the basis of his opinion. We agree with the claimant.
¶ 21 The Commission is charged with the functions of deciding questions of fact, judging the credibility of witnesses, and resolving conflicting medical evidence. Docksteiner v. Industrial Comm'n, 346 Ill.App.3d 851, 856, 282 Ill.Dec. 255, 806 N.E.2d 230, 234-35 (2004). "Likewise, it is for the Commission to decide which of two conflicting opinions should be accepted." Setzekorn v. Industrial Comm'n, 353 Ill.App.3d 1049, 1055, 289 Ill.Dec. 810, 820 N.E.2d 586, 592 (2004). We will not disturb the Commission's resolution of a question of fact unless it is against the manifest weight of the evidence. Docksteiner, 346 Ill.App.3d at 856, 282 Ill.Dec. 255, 806 N.E.2d at 235. "For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent." Docksteiner, 346 Ill.App.3d at 857, 282 Ill.Dec. 255, 806 N.E.2d at 235. "While we are not easily moved to set aside a Commission decision on a factual question, we will not hesitate to do so where the clearly evident, plain, and indisputable weight of the evidence compels an apparent, opposite conclusion." Montgomery Elevator Co. v. Industrial Comm'n, 244 Ill.App.3d 563, 567, 184 Ill. Dec. 505, 613 N.E.2d 822, 825 (1993).
¶ 22 The claimant argues that he only needed to prove that the inhalation of coal dust was a causative factor in his COPD, not that it was the only factor or that his cigarette smoking was not also a contributing factor. We agree. To recover compensation under the Occupational Diseases Act, the claimant must prove both that he suffers from an occupational disease and that a causal connection exists between the disease and his employment. Bernardoni v. Industrial Comm'n, 362 Ill.App.3d 582, 596, 298 Ill.Dec. 530, 840 N.E.2d 300, 312 (2005). However, the occupational activity need not be the sole or even the principal causative factor, as long as it is a causative factor in the resulting condition of ill-being. Id.
¶ 23 Of great significance in this case is the fact that the claimant had been exposed to both coal dust and cigarette smoke for a period of nearly 40 years. Both experts agreed that either exposure could have caused obstructive lung disease. Both experts testified that obstructive lung disease may be multifactorial in origin. Both experts agreed that pulmonary function testing reveals the nature and severity of a defect, but not its specific etiology. Thus, Dr. Houser concluded that, since the claimant had significant exposure to both coal dust and cigarette smoke, his obstructive lung disease was caused by a combination of those exposures. Dr. Renn, on the other hand, opined that despite the claimant's significant exposure to coal dust, his obstructive lung disease was caused solely by cigarette smoking. His only explanation for this conclusion was that it was based upon the pattern of spirometry testing "associated with tobacco smoking versus the pattern that you would see in coal workers' pneumoconiosis." We are unable *594 to reconcile Dr. Renn's testimony that pulmonary function testing will not reveal the specific etiology of a pulmonary defect with this explanation. We also find no explanation in Dr. Renn's testimony of how the pattern of pulmonary function testing for CWP reveals the cause of the claimant's COPD. Finally, we note that Dr. Renn's opinion that the claimant's cigarette smoking was "more than adequate" to explain his COPD does not rule out his inhalation of coal dust as a contributing or aggravating factor.
¶ 24 "Expert opinions must be supported by facts and are only as valid as the facts underlying them." In re Joseph S., 339 Ill.App.3d 599, 607, 274 Ill.Dec. 284, 791 N.E.2d 80, 87 (2003). "An expert opinion is only as valid as the reasons for the opinion." Kleiss v. Cassida, 297 Ill. App.3d 165, 174, 231 Ill.Dec. 700, 696 N.E.2d 1271, 1277 (1998). The proponent of expert testimony must lay a foundation sufficient to establish the reliability of the bases for the expert's opinion. Torres v. Midwest Development Co., 383 Ill.App.3d 20, 28, 321 Ill.Dec. 389, 889 N.E.2d 654, 662 (2008). If the basis of an expert's opinion is grounded in guess or surmise, it is too speculative to be reliable. Modelski v. Navistar International Transportation Corp., 302 Ill.App.3d 879, 885, 236 Ill.Dec. 394, 707 N.E.2d 239, 244 (1999).
¶ 25 Ordinarily, we would not reverse the Commission when its decision is based upon the amount of weight to be given expert opinions. Here, however, it is apparent from the record that at the arbitration hearing the primary focus of the parties' evidence was the claimant's claim for CWP. The decision of the arbitrator, which was adopted by the Commission, contains extensive analysis of the CWP claim and no analysis of the COPD claim. Thus, it is reasonable to conclude that the Commission, in giving the opinions of Dr. Renn greater weight on the CWP claim, also simply adopted his general opinion that none of the claimant's diagnoses are related to his inhalation of coal dust.
¶ 26 We do not believe that there is sufficient evidence in the record to support the opinion of Dr. Renn that the claimant's significant history of inhalation of coal dust was not a contributing or aggravating cause of his COPD. The employer has simply not offered an adequate explanation or factual basis for a determination that the sole cause of the claimant's obstructive lung disease is cigarette smoking. We cannot say what our decision would be under circumstances where the claimant did not have significant exposure to both coal dust and cigarette smoking. However, on this record, where the undisputed evidence is that the claimant had nearly 40 years of exposure to both coal dust and cigarette smoke, we believe that the Commission's finding that his COPD was solely caused by cigarette smoking is against the manifest weight of the evidence. Accordingly, we must reverse the Commission's decision that the claimant failed to prove an exposure to an occupational disease arising out of and in the course of his employment and that his condition of illbeing is causally related to his employment. Since the Commission did not reach the issue of disablement, this cause must be remanded to the Commission for a determination of whether disablement exists and, if so, the nature and extent of the disability caused by the claimant's COPD.

¶ 27 CONCLUSION
¶ 28 We reverse the decision of the circuit court confirming the decision of the Commission and remand to the Commission for further proceedings.
¶ 29 Reversed and remanded.
*595 Justices HOFFMAN, HUDSON, and HOLDRIDGE concurred in the judgment and opinion.
Presiding Justice McCULLOUGH dissented, with opinion.
¶ 30 Presiding Justice McCULLOUGH, dissenting.
¶ 31 I dissent from the majority's reversal of the circuit court, the Commission, and the arbitrator.
¶ 32 Keeping in mind that we are not the fact finders, it is clear that the decision of the arbitrator, as affirmed by the Commission and confirmed by the circuit court, was clearly made within the provisions of the Occupational Diseases Act. The arbitrator found that the plaintiff "failed to prove by a preponderance of the evidence the presence of coal workers' pneumoconiosis or its causal relationship to his last workplace exposure. Opinions expressed by Dr. Renn and Dr. Wiot as to the presence of disease, its nature and cause are in accordance with the treatment records of Petitioner and their opinions are given greater weight than that of Drs. Houser or Whitehead."
¶ 33 The arbitrator's decision as affirmed by the Commission went into considerable detail setting forth the factual background. The decision of the Commission was clearly not against the manifest weight of the evidence.