**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (5th) 190226WC-U

Order filed October 20, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

_____

| | | |
|---|---|---|
| GREGORY DOTSON, | ) | Appeal from the Circuit Court |
| | ) | of White County, Illinois |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 5-19-0226WC |
| THE ILLINOIS WORKERS' | ) | Circuit No. 18-MR-5 |
| COMPENSATION COMMISSION *et al.*, | ) | |
| | ) | |
| (Mike Frerichs, State Treasurer and *Ex-Officio* | ) | Honorable |
| Custodian of the Rate Adjustment Fund, and | ) | T. Scott Webb, |
| White County Coal, Appellees). | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Hoffman, Hudson, Cavanagh, and Barberis concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:  The Commission's finding that the claimant did not suffer a disease which arose out of and in the course of his employment was not against the manifest weight of the evidence.

¶ 2        The claimant, Gregory Dotson, appeals an order of the circuit court of White County confirming a decision of the Illinois Workers' Compensation Commission (Commission) denying him benefits pursuant to the Illinois Workers' Occupational Diseases Act (820 ILCS 310/1 *et seq.*

(West 2012)). The Commission affirmed the decision of the arbitrator, finding that the claimant failed to prove that he suffered from coal workers' pneumoconiosis (CWP) or chronic bronchitis that arose out of and in the course of his employment and his current condition of ill-being was causally related to his employment.

¶ 3                                    I. BACKGROUND

¶ 4        The following factual recitation is taken from the evidence presented at the arbitration hearing conducted on February 11, 2016, and the Commission's Decision and Opinion on Review dated December 26, 2017.

¶ 5        The claimant testified that he was 57 years old and had a 7th grade education. He worked in the coal mines for 30 years, all underground. For five years he worked for a mine in Kentucky. He began working for White County Coal in 1985 as a roof bolter, where he was exposed to silica rock dust. The claimant worked as a roof bolter for five years, after which he drove a shuttle car that took the coal to where it was loaded on belts to be transported out of the mine. The claimant drove the shuttle for 11 years and then began putting in belts, eventually becoming a belt greaser. His employment with White County Coal was terminated on March 11, 2010, over a time dispute. He did not work anywhere else after that.

¶ 6        The claimant did not remember when he first began having breathing problems but stated that he had had such problems for a long time. He said he was driving a shuttle car when he first noticed problems breathing, and his breathing worsened as he continued working in the mine and had remained consistent since he stopped working at the mine. He used an inhaler to help with his breathing. The claimant testified that his breathing problems affected his daily activities. He became short of breath after walking 50 to 100 feet or climbing five or six stairs. The claimant had been a smoker for about 40 years and smoked about a pack a day.

¶ 7 The claimant testified that his primary care provider was Dr. Alejandro Alvarez at Hamilton Memorial Hospital Clinic. He told Dr. Alvarez about his breathing problems. The claimant also had other health issues, including diabetes and hypertension. He had a heart attack and back surgery. He had a new primary care physician, but did not remember the doctor's name. The claimant stated that it had been a long time since he had last seen a doctor for his breathing problems.

¶ 8 While this claim was filed in June 2010, the claimant first saw Dr. Alvarez in November 2010, when he made an appointment to obtain refills for the medications he took for his other medical problems. He had never sought any medical treatment for his breathing problems while he worked in the mine. However, the claimant did complain about a cough on February 17, 2009, to his doctor. The doctor told him that he believed the cough was because of some medication he was on. The claimant again reported a cough in October 2009, stating that it was worse when he was lying down. The doctor thought it may have been caused by gastroesophageal reflux disease (GERD). The claimant complained of a cough when seeing Dr. Alvarez in November 2010 and that was the first time he was prescribed an inhaler. He went back to Dr. Alvarez in June 2011 with a cough and told Dr. Alvarez that the medication was not helping, though he was prescribed the same medication. He again saw Dr. Alvarez in November 2012 for his other medical problems. Dr. Alvarez changed his medication as one of the side effects was coughing.

¶ 9 In April 2014, the claimant was sent to see a pulmonologist, Dr. David Chiraq, by his treating physician at Hamilton. Dr. Chiraq sent the claimant for a chest x-ray and pulmonary function study. Dr. Chiraq found that both the chest x-ray and pulmonary function studies were normal and the claimant's cough was due to medication or GERD, and changed the claimant's

3

medication to Dulera. The last doctor the claimant saw was Dr. Chiraq in June 2014. At that point, he told Dr. Chiraq that he was taking his medication and doing well.

¶ 10        Dr. Glennon Paul testified via evidence deposition. He was a senior physician at the Central Illinois Allergy and Respiratory Clinic, specializing in allergy and pulmonary diseases. He was board-certified in allergy, immunology, and asthma. Dr. Paul performed and read about 15-20 chest x-rays and pulmonary function tests a day, but he was not a B-reader. He often examined coal miners for black lung claims.

¶ 11        Dr. Paul examined the claimant in December 2012. The claimant did not tell Dr. Paul when he began having symptoms or that he was taking medication. Dr. Paul testified that the claimant had CWP. Chest x-rays he reviewed showed fibrous lesions throughout both lung fields with bilateral plaques. The claimant's pulmonary function studies were normal, except for a moderate decrease in carbon monoxide diffusing capacity. This would either be because of emphysema or interstitial fibrosis from CWP. Dr. Paul said if the carbon monoxide diffusing capacity was decreased with some restrictive airway disease, it would mean there was interstitial inflammation seen in CWP. However, if it was decreased with obstructive airway disease, it would mean emphysema. Dr. Paul said the carbon monoxide diffusing capacity in the test he performed showed neither severe obstruction nor restriction, so he based his opinion of CWP on the x-rays that he said showed interstitial fibrosis. Dr. Paul stated that a person could have CWP and still have a normal pulmonary function test. The chest x-rays Dr. Paul reviewed were not taken by him or at his office. He did not know when the x-rays were taken or who took them. He gave the x-rays to the claimant after reviewing them.

¶ 12        Based on an opinion letter from Dr. Alvarez, Dr. Paul also believed that the claimant had chronic bronchitis from a combination of smoking and coal dust exposure, though he stated that

4

the claimant's spirometry results were within normal limits. He stated that a person could have chronic bronchitis and have normal pulmonary function testing, blood gas testing, and physical examination of the chest. The inhalation of coal mine dust could result in chronic cough and chronic bronchitis. Dr. Paul did not diagnose the claimant with chronic bronchitis when he wrote his report and stated that he did not know for sure if the claimant had chronic bronchitis. He did not see any medical records showing that the claimant had been diagnosed with chronic bronchitis previously.

¶ 13 Dr. Paul stated that the claimant could no longer work in a coal mine. There was no cure for CWP and the claimant's condition would worsen by continuing to smoke. According to Dr. Paul, the claimant's CWP could continue to progress even after he ended his exposure to coal mine dust.

¶ 14 Dr. Paul testified that he saw no medical records as part of his evaluation of the claimant. He originally stated that he saw the claimant's medical records when preparing for the deposition, but later said that he only saw a letter from Dr. Alvarez summarizing his records. However, he stated that reviewing treatment records would not change the results obtained from his reading of the chest x-rays, pulmonary function test, and the physical examination.

¶ 15 Dr. Alvarez testified via evidence deposition that he was a family practitioner who worked at Hamilton Memorial Hospital for three years prior to August 2013. He last saw the claimant on June 14, 2011. He stated that he prepared a letter on February 14, 2013, which contained his medical opinions regarding the claimant, at the claimant's request. He stated that the claimant had chronic bronchitis, which was multifactorial and caused or aggravated by his 30 years of coal mine work as well as his tobacco use. Based on this, Dr. Alvarez stated that any attempt to go back to work in the mine would be bad for the claimant's health. He prescribed Flovent, ProAir, and

5

Albuterol. He stated that the wheezing noise noted in the claimant's medical records was related to the claimant's chronic bronchitis.

¶ 16    Dr. Alvarez did not recall seeing any other physician's records suggesting a diagnosis of chronic bronchitis. He believed that the claimant met the criteria for chronic bronchitis based on the medical history that he gathered from the claimant. The claimant told him that he had been coughing for years, but it was not documented in his medical records. On cross-examination, Dr. Alvarez agreed that the claimant's cough could be due to GERD, which was contained in the medical history he obtained from the claimant. There was no medical testing to establish a diagnosis of chronic bronchitis.

¶ 17    Medical records from Smith Radiology, Inc. were entered into evidence. On April 20, 2010, Dr. Henry Smith reviewed the claimant's chest x-rays from March 30, 2010. Dr. Smith's impression was that the claimant had CWP. Dr. Smith also reviewed a CT of the claimant's chest performed on March 21, 2012, which he stated also revealed CWP.

¶ 18    The rest of the claimant's medical records chronicled his cough. On February 17, 2009, the claimant was seen at Hamilton Memorial Family Clinic, reporting a chief complaint of nausea, but also noted that he coughed off and on and sometimes coughed until he vomited. The assessment was that of uncontrolled hypertension, non-insulin dependent diabetes mellitus, coronary artery disease, hyperlipidemia, history of back surgery, and medication induced coughing. Dr. Alvarez saw the claimant again on March 4, 2009, and the claimant complained of rib pain every time he coughed. He was assessed with cough, Type II diabetes, and pleurisy. On October 16, 2009, the claimant complained of increased coughing when lying down, stating that his cough was worse that time of year. Dr. Alvarez noted that the claimant needed an upper GI due to his persistent supine cough to reassess his GERD status. The claimant reported an acute complaint of chronic

cough, especially during the winter, at an appointment on November 12, 2010. The records state that for his chronic bronchitis he was prescribed ProAir and Flovent. On June 14, 2011, the claimant stated that he had had a cough for a month. He was assessed with cough and uncontrolled diabetes. The claimant was seen on November 27, 2012, with issues related to diabetes, hyperlipidemia, and hypertension. The records noted that the claimant had a chronic cough, and his Lisinopril was stopped based on a suspicion of captopril cough. He next reported a cough on April 7, 2014, when he stated that he began coughing three months prior. The claimant was assessed with chronic bronchitis and referred for a pulmonary consult. Chest x-rays were performed on May 7, 2014, which were interpreted as revealing no acute cardiopulmonary process.

¶ 19       The claimant saw a doctor at Crossroads Physicians Corporation on April 9 and 16, May 7, and June 11, 2014. The claimant's cough was noted to be improving, and his pulmonary function testing was normal. The doctor believed it was GERD instead of eosinophilic bronchitis.

¶ 20       The evidence deposition of Dr. Jeffrey Selby was entered into evidence by the employer. Dr. Selby was board-certified in internal medicine and pulmonology and had been a certified B-reader since 1985. Dr. Selby examined the claimant on March 21, 2012. As part of the evaluation, he ordered a multitude of tests, including pulmonary function testing, chest x-rays, and a CT of the chest. During the physical examination, Dr. Selby's abnormal findings included obesity with a protuberant abdomen and a tobacco smoke smell on the claimant's hand. The claimant told Dr. Selby that he smoked ½ to 1 pack of cigarettes a day on and off for five years, but that he had not smoked in two to three years. When confronted with his carbon monoxide levels, the claimant changed his story and admitted that he was still smoking. Dr. Selby stated that the pulmonary function studies were normal, and the claimant had no lung disease. After reviewing all the studies and testing, he believed that the claimant did not suffer from any respiratory abnormality, nor did

7

he believe the claimant had CWP. Regarding the claimant's shortness of breath, Dr. Selby stated that shortness of breath was subjective, and if he truly had shortness of breath, it was likely caused by his obesity, deconditioned state, and smoking.

¶ 21    Dr. Selby supplemented his report on April 2, 2014, after reviewing additional information, including Dr. Paul's report and deposition. Dr. Selby stated that the difference was that Dr. Paul believed the claimant had fibrosis on his x-rays that accounted for the abnormal diffusing capacity that he noted, but Dr. Selby did not think that either one of those truly reflected the condition of the claimant. He agreed that Dr. Paul's pulmonary function study showed an abnormal diffusing capacity, while his study showed a normal one. He stated that for a diffusion capacity to be valid, there needed to be curves included on the report and graphs or readings from the machine were important to evaluate the accuracy of the testing. The graph was not present in Dr. Paul's report. Dr. Selby stated that diffusion capacity could wax and wane due to mucus plugging, blocking of parts of the airway, congestive heart failure, pneumonia, or an acute inflammatory reaction or infections, but if there was a chronic illness, the diffusion capacity would not wax and wane. Nothing in Dr. Paul's report or transcript changed Dr. Selby's opinion.

¶ 22    The arbitrator found that the claimant failed to prove that he suffered from CWP that arose out of and in the course of the exposures of his coal mine employment or that his current state of ill-being was causally related to his employment. In doing so, the arbitrator found the x-ray interpretation of Dr. Selby to be more persuasive than that of Dr. Smith and Dr. Paul. The arbitrator stated that Dr. Paul failed to identify the date of the x-rays that he reviewed in coming to his conclusion and was not a B-reader or board-certified in pulmonary disease. The arbitrator also noted that the reports of Dr. Smith were very cursory in providing the basis for his opinions. On the other hand, the arbitrator stated that Dr. Selby was board-certified in pulmonology and a B-

8

reader. The arbitrator noted that Dr. Selby was thorough in his testimony regarding the basis for his finding founded on his interpretation of the chest x-rays and CT scans.

¶ 23 Additionally, the arbitrator found that the claimant failed to prove that he had chronic bronchitis. Again, the arbitrator found the opinions of Dr. Selby to be more informed and well-founded that that of Dr. Paul. The arbitrator noted that Dr. Selby reviewed the claimant's medical records, while Dr. Paul did not review any medical records, but only later reviewed a letter the claimant's attorney sent him from Dr. Alvarez. The arbitrator found that Dr. Selby's opinion that the claimant did not suffer from chronic bronchitis was consistent with the lack of reported consistent symptomology in the claimant's treating records. The arbitrator noted that there were notations in Dr. Alvarez's records suggesting the claimant's coughing was intermittent in nature, and the records suggested that it was either related to the claimant's mediations or other co-morbidities like GERD. Moreover, the arbitrator noted that Dr. Paul originally diagnosed the claimant with CWP and did not suggest the diagnosis of chronic bronchitis at that time. Finally, the arbitrator questioned the veracity of the claimant's testimony, based on the incorrect smoking history he provided Dr. Selby.

¶ 24 The Commission affirmed and adopted the decision of the arbitrator. The claimant sought review of the Commission's decision before the circuit court of White County. On May 20, 2019, the circuit court confirmed the Commission's decision.

¶ 25 II. ANALYSIS

¶ 26 The claimant argues that the Commission erred in finding that he did not suffer a disease which arose out of and in the course of his employment.

¶ 27 Whether a claimant suffers from a work-related occupational disease presents a question of fact. *Gross v. Illinois Workers' Compensation Comm'n*, 2011 IL App (4th) 100615WC, ¶ 21.

9

We will only disturb the Commission's findings if they are against the manifest weight of the evidence. *Id.* A finding is against the manifest weight of the evidence when the opposite conclusion is clearly apparent. *Id.* It is the Commission's province to judge the credibility of witnesses, to draw reasonable inferences from the testimony, and to determine what weight the testimony is to be given. *Shafer v. Illinois Workers' Compensation Comm'n*, 2011 IL App (4th) 100505WC, ¶ 38. We owe substantial deference to the Commission's resolution of medical testimony as its expertise has long been recognized. *Long v. Industrial Comm'n*, 76 Ill. 2d 561, 566 (1979). On review, it is not the prerogative of the appellate court to reweigh the evidence or substitute its judgment for that of the Commission. *Setzekorn v. Industrial Comm'n*, 353 Ill. App. 3d 1049, 1055 (2004). It is the burden of a claimant to establish before the Commission every element of his or her claim by a preponderance of the evidence. *Navistar International Transportation Corp. v. Industrial Comm'n*, 315 Ill. App. 3d 1197, 1202 (2000). Likewise, on review, it is the claimant's burden, as the appellant, to establish error in the proceedings below. *TSP-Hope, Inc. v. Home Innovators of Illinois, LLC*, 382 Ill. App. 3d 1171, 1173 (2008).

¶ 28        The claimant's brief amounts to a long list of reasons why the Commission should have accepted or given greater weight to the medical evidence of Dr. Paul and Dr. Smith over that of Dr. Selby, including: (1) greater weight should have been given to Dr. Smith because he was a B-reader and a radiologist and less weight should have been given to the fact that Dr. Paul was not a B-reader; (2) the fact that Dr. Paul did not know the date of the x-rays should not have mattered; (3) the Commission omitted the fact that Dr. Paul's certification in allergy, immunology, and asthma is closely related to pulmonology and placed too much weight on Dr. Selby's certification in pulmonology; and (4) the opinions of Dr. Paul and Dr. Alvarez regarding chronic bronchitis should have been accepted, and Dr. Selby's opinion rejected.

¶ 29    These arguments amount to a request for this court to reweigh the evidence and substitute our judgment, which we will not do. *Setzekorn*, 353 Ill. App. 3d at 1055. The Commission was faced with conflicting medical opinions. Dr. Paul and Dr. Smith diagnosed the claimant with CWP. Dr. Selby found that the claimant did not have CWP. The Commission found the opinions of Dr. Selby to be more persuasive. In doing so, it noted that Dr. Paul was not a B-reader or certified in pulmonary disease and failed to identify the date of the x-rays he reviewed. While this fact is not dispositive, it could call into question the reliability of Dr. Paul's opinion, which is a matter best addressed by the Commission. See *Freeman United Coal Mining Co. v. Industrial Comm'n*, 286 Ill. App. 3d 1098, 1103-04 (1997). It also found the opinion of Dr. Smith to be very cursory in nature, while Dr. Selby provided a more thorough basis for his findings during his testimony. See *Buda Co. v. Industrial Comm'n*, 377 Ill. 215, 220 (1941) ("An expert witness may strengthen his opinion by the statement of basic facts and underlying reasons so that his opinion is more convincing and entitled to greater weight than *** experts whose opinions are not so fortified."). Again, it was within the purview of the Commission to come to this conclusion. *Shafer*, 2011 IL App (4th) 100505WC, ¶ 38.

¶ 30    Both Dr. Alvarez and Dr. Paul diagnosed the claimant with chronic bronchitis. Dr. Selby found that the claimant did not have chronic bronchitis. Again, the Commission found Dr. Selby's opinion more persuasive. In doing so, it noted that Dr. Selby had reviewed all the medical records and that there was support for Dr. Selby's opinion in the records, which suggested that the claimant's coughing was sporadic and likely caused by medication, GERD, or the claimant's other co-morbidities. The Commission called into question Dr. Paul's diagnosis since he did not diagnose the claimant with chronic bronchitis initially, but only after the letter from Dr. Alvarez, and did not review the entirety of the claimant's medical records. It was up to the Commission to

11

resolve this conflict, and we will not substitute our judgment for its. We do not find that the Commission's decision was against the manifest weight of the evidence.

¶ 31    Because the claimant failed to carry his burden of proving that he suffered from a disease which arose out of and in the course of his employment, we need not consider his second argument that his current condition of ill-being is causally related to the injury.

¶ 32                                III. CONCLUSION

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court of White County, which confirmed the Commission's decision.

¶ 34    Affirmed.