**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 200004WC-U

Order filed September 24, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

_____

| | | |
|---|---|---|
| AFI OGOUBI, | ) | Appeal from the Circuit Court |
| | ) | of Rock Island County, Illinois, |
| Appellant, | ) | |
| | ) | |
| v. | ) | Appeal No. 3-20-0004WC |
| | ) | Circuit No. 18-MR-976 |
| THE ILLINOIS WORKERS' | ) | |
| COMPENSATION COMMISSION *et al.*, | ) | Honorable |
| | ) | James Conway, |
| (Tyson Foods, Inc., Appellee). | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Hoffman, Hudson, Cavanagh, and Barberis concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The Commission's finding that the claimant failed to prove that her condition of ill-being was causally related to her work accident was not against the manifest weight of the evidence.

¶ 2     The claimant, Afi Ogoubi, appeals an order of the circuit court of Rock Island County confirming a decision of the Illinois Workers' Compensation Commission (Commission) denying her benefits pursuant to the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.*

(West 2012)). The Commission modified the decision of the arbitrator, finding that the claimant failed to prove that her condition of ill-being was causally related to her work accident.

¶ 3                                         I. BACKGROUND

¶ 4        The following factual recitation is taken from the evidence presented at the arbitration hearing conducted on April 5, 2016, including the testimony of the claimant and evidence depositions of Dr. Neeraj Jain, Dr. Robert Erickson, and Dr. Edward Goldberg, and the Commission's Decision and Opinion on Review dated November 30, 2018.

¶ 5        The claimant testified through a French interpreter that she started working for Tyson in October 2007 doing light duty work as a fat picker. Her job duties required her to remove the fat and bones from meat as it went by on a conveyer belt. The meat would continue on the belt to her right, and she would discard the fat and bones to her left. She also had to monitor a machine to confirm that the meat was the correct weight. The job required her to turn her neck and body repetitively to monitor the conveyer belts and machine. If bone or too much fat went into the machine, she would get in trouble. She performed this job for seven or eight hours a day.

¶ 6        On March 27, 2013, the claimant stated that the machine was not working. When it started working again, a lot of meat came at once. She had to stop the meat with her right hand and pulled back with her left hand. She suddenly felt a pain on the right side of her neck. The claimant reported this to her supervisor, and she was treated by the nurse and given ice and pain medication. When the pain did not subside, she was referred to Tyson's doctors, Dr. Gregory Clem and Dr. Jeff Brower, who diagnosed her with right trapezius and shoulder strains and prescribed medication and physical therapy. The physical therapy took place at the Tyson facility where she worked. She would do the physical therapy for 30 minutes, twice a week for four weeks. The physical therapy took place during the workday, and then she would go back to doing her work. The claimant

received x-rays of the shoulder and cervical spine on June 19, 2013, which were negative. On July 31, 2013, Dr. Clem found the claimant had reached maximum medical improvement (MMI) as she had completed therapy and was doing much better. The claimant saw Dr. Brower again in August for some pain, but he found she had reached MMI on September 16, 2013.

¶ 7     Following a seven-month gap in treatment, the claimant, a Moline resident, sought treatment at Michigan Avenue Associates in Chicago, where she saw Dr. David Schafer, Dr. Jain, and Dr. Erickson. She visited Dr. Schafer on April 9, 2014, complaining of neck and upper back pain radiating into her right arm. Dr. Schafer believed that she had cervical radiculopathy and recommended magnetic resonance imaging (MRI).

¶ 8     Dr. Jain was a doctor of pain management and anesthesia. He evaluated the claimant on April 17, and May 29, 2014, when she presented with neck and upper back pain radiating into her right upper arm. The claimant told Dr. Jain that her job involved pushing meat and de-skinning meat products repetitively, but that was the extent of the job information she gave him. He did not have any of the claimant's medical history, other than her examination with Dr. Schafer. The claimant did not tell him of any prior injuries or treatment. After examining the claimant, Dr. Jain diagnosed her with cervical facet syndrome, cervical discogenic pain, and cervical radiculopathy. In his report, he wrote that the claimant's symptoms were directly related to an injury at work and that the treatment rendered to that point was necessary and reasonable. Dr. Jain planned on performing cervical facet injections, prescribed physical therapy, and told her to continue with pain medication. He kept her on full work duty and ordered some further tests but did not know if that was done as he did not see the claimant again.

¶ 9     Dr. Erickson was board certified in neurological surgery and first saw the claimant on June 27, 2014. She came to see Dr. Erickson because of neck pain. Subordinately, she complained of

shoulder pain and pain between her shoulder blades, which she reported she felt immediately with the injury she incurred on March 27, 2013. She had told Erickson that, at that time, she began having pain extending into her right arm and noticed that her grip was weak on the right side. He conducted an examination of the claimant and diagnosed her with "cervical disc herniation at C5-6 with cervical radiculopathy affecting the C6 nerve root, worse on the right side." When asked whether he believed the claimant's work at Tyson was causally connected to her diagnosis, he stated,

"In the absence of other injury history, I would say yes. She was engaged in repetitive lifting and twisting involving the upper extremities. While she did not have a distinct incident, that type of activity is certainly sufficient to cause failure of the covering of a cervical disc which can then later progress and become gradually worse. I do know of an accident that she had in 2009. It was my understanding it was also for the same company and that she was treated for what was diagnosed in general terms as a strain of the upper back area."

¶ 10        The only medical records Dr. Erickson reviewed were from the claimant's visits with Dr. Jain and Dr. Schafer. He was not informed of any prior injuries. He stated that he reviewed the positive Spurling test results received by Dr. Jain and Dr. Schafer and stated that such a finding would be consistent with cervical disc herniation. At the time that Dr. Erickson saw the claimant, it was his opinion that she had not reached MMI. He recommended surgery at her first visit because she had reported having the symptoms over many months. He did not recommend injection therapy. Dr. Erickson stated that he last saw the claimant on December 12, 2014, approximately seven months prior to the deposition. He stated that, before seeing him, the claimant had undergone conservative treatment for the pain through physical therapy, medication, and injections. He felt

4

this to be reasonable and necessary. He did not review a job description, but solely relied on the information provided by the claimant regarding her job duties.

¶ 11      The claimant was sent to Dr. Goldberg for an independent medical examination (IME) on July 14, 2014. Dr. Goldberg was an orthopedic surgeon at Rush University Medical Center in Chicago and subspecialized in the spine. Dr. Goldberg's report stated that the claimant:

> "reported injuring her neck and shoulder on March 27th of 2013 while working at Tyson. She stated that she is required to take fat off of chicken meat and toss it into the garbage. On March 27th, 2013, she states she was performing this and developed neck pain towards the right shoulder. She had told me she was seen by physicians at Tyson, had completed some therapy and returned to work full duty. She reported that she continued to have neck pain traveling to both shoulders and towards the interscapular region, meaning should blades. Occasionally it would radiate under her breasts in the front of her chest anteriorly. She specifically denied any radicular pain in the upper extremities, any motor deficits, or bowel or bladder dysfunction. She was continuing to work full duty."

He had reviewed the claimant's written job description as well as all previous medical records when evaluating the claimant.

¶ 12      Dr. Goldberg performed a physical examination and found the claimant's motor, sensation, and reflexes normal and range of motion to be 80% normal. The claimant initially stated that Dr. Goldberg did not touch her at all to examine her. She later admitted that Dr. Goldberg did move her arms when examining her. He diagnosed her with cervical strain and did not recommend any additional treatment. He did not believe that facet injections would be beneficial. He thought that, up to that point, the physical therapy and medications prescribed had been appropriate. Dr.

Goldberg noted that the claimant had been working full duty and could continue to do so. He reviewed the MRI the claimant received on April 9, 2014, and found a minimal bulge, which was normal, and no evidence of herniation or stenosis. He believed the cervical strain to be caused by the March 27, 2013, incident. Dr. Goldberg found the claimant had reached MMI.

¶ 13     Dr. Goldberg issued an addendum on January 18, 2016, after reviewing Dr. Erickson's records and the depositions of Dr. Jain and Dr. Erickson, and re-reviewing Dr. Jain's records. Based on the information before him, Dr. Goldberg still believed that the claimant had cervical strain that did not require any further treatment. He did not believe that there was a causal connection between the work accident and any arm pain since she did not complain about such pain until a year after the accident. Dr. Goldberg did not believe that the claimant was a surgical candidate based on his review of the MRI, which showed no herniation and no nerve compression. While Dr. Goldberg did not perform a Spurling test, he stated:

> "[H]er MRI shows a little bulge at C5-6. There is no nerve compression that would result in a positive Spurling test. The Spurling's would have to be ipsilateral, the pathology would have to be compressing the exiting nerve root. So in this case, if there was truly right arm radicular pain it would have to be the C5-6 nerve root, the MRI clearly does not disclose that. I did not believe she had facetogenic pain, as I mentioned to counsel before, there was no facet arthropathy noted upon the MRI that would *** leave me to believe that it's facetogenic pain. Hence, I felt she had a cervical strain. And more notably when she reported to me at the time of my evaluation on 7/14/14, which is even after Dr. Schafer in April of 2014, she did not report radicular pain."

Dr. Goldberg believed that he had a more comprehensive understanding of the case than Dr. Jain, Dr. Erickson, or Dr. Schafer since he had reviewed all the claimant's records as well as her job description and had a more comprehensive view of her complaints throughout time.

¶ 14      Since the claimant had last seen Dr. Erickson in December 2014, she had not seen any doctors and was not on any prescription medication. She continued to do light duty work for Tyson as a fat picker, though stated that the job had changed slightly. As of the day of her testimony, the claimant said that she still felt pain that started at her neck, radiated down her right shoulder, arm, side, and back.

¶ 15      When asked whether she ever had any neck pain, injury, or treatment, prior to March 27, 2013, whether at work or outside work, the claimant stated that she did not. When asked whether she was treated for neck pain after a motor vehicle accident in November 2007, the claimant stated that she was in an accident but did not complain of any neck pain. The claimant was shown medical records that showed that she complained of neck pain after the 2007 accident. Nonetheless, the claimant continued to deny complaining of neck pain after the accident.

¶ 16      The claimant was asked if she had received any other treatment for neck or shoulder pain between 2007 and 2013. The claimant stated that she had not. A medical record from October 24, 2008, was shown to her. The record showed that claimant was seen by a doctor for neck, shoulder, and upper back pain and stated that the reason for the exam was a second motor vehicle accident. The claimant denied being in an accident in 2008 and denied seeking any treatment for her neck, shoulder, or back. The claimant was asked whether she received any insurance settlement after an October 24, 2008, accident. The claimant said that she did not. After she was shown a copy of the settlement and the claimant spoke off the record with her attorney, she finally admitted to being in an accident in 2008 for which she received treatment to her cervical spine and shoulder, but stated

7

that she did not have any problem with her neck at that time, despite the patient history sheet stating that she had neck pain and stiffness. The claimant stated that she had denied being in an accident earlier and receiving a settlement because she was not the one driving the vehicle and the check was sent to her boyfriend, though all the documents were in the claimant's name. The claimant stipulated that the money was used to pay the claimant's medical bills.

¶ 17 After reviewing the evidence presented, the arbitrator awarded the claimant $20,558.70 as reasonable and necessary medical services in addition to prospective medical care as recommended by Dr. Erickson and Dr. Jain, pursuant to sections 8(a), (j), and 8.2 of the Act. 820 ILCS 305/8(a), (j), 8.2 (West 2016). In doing so, the arbitrator found that the claimant sustained an accident arising out of her employment and such accident was the cause of her current condition.

¶ 18 On review, the Commission modified the arbitrator's decision by reversing the awards of medical expenses and prospective medical care, finding that the claimant's cervical, right trapezius, and right shoulder strains caused by the March 27, 2013, accident were completely resolved in 2013, and that the problems for which she received treatment beginning in 2014 were not causally related to her work injury. In doing so, the Commission noted that the claimant received treatment from Dr. Clem and Dr. Brower for a period of six months after the injury. During this time, the claimant never complained of radiating arm pain. Dr. Clem found her to be at MMI on July 31, 2013, and Dr. Brower also found her to be at MMI on September 16, 2013. After that point, the claimant did not seek any treatment for seven months. The Commission noted that the claimant first complained of arm pain one year after the injury. Moreover, the Commission found the opinions of Dr. Erickson and Dr. Jain unpersuasive based on: (1) the incomplete and inaccurate medical history provided by each of them by the claimant, who was thoroughly impeached at the hearing; (2) the failure of either of them to consider the claimant's job

8

description; (3) their inconsistent opinions; (4) Dr. Erickson's attribution of her pain to the claimant's repetitive work activities as opposed to a distinct accident; and (5) Dr. Jain's agreement with the claimant's request to be released to full duty work. Instead, the Commission relied on Dr. Goldberg's opinions.

¶ 19    The claimant sought review of the Commission's decision before the circuit court of Rock Island County. On December 9, 2019, the circuit court confirmed the Commission's Decision.

¶ 20                                   II. ANALYSIS

¶ 21    The claimant argues that the Commission's finding that there was no causal connection between her March 27, 2013, work accident and the injuries she presented with in 2014 was against the manifest weight of the evidence.

¶ 22    Under the Act, the claimant has the burden of establishing, by a preponderance of the evidence, that her injury arose out of and in the course of her employment. *Nee v. Illinois Workers' Compensation Comm'n*, 2015 IL App (1st) 132609WC, ¶ 19. It is the Commission's province to judge the credibility of witnesses, to draw reasonable inferences from the testimony, and to determine what weight the testimony is to be given. *Shafer v. Illinois Workers' Compensation Comm'n*, 2011 IL App (4th) 100505WC, ¶ 38. Moreover, it is the Commission's duty to resolve conflicts in medical evidence. *Amoco Oil Co. v. Industrial Comm'n*, 218 Ill. App. 3d 737, 747 (1991). As this issue involves a question of fact, we will only disturb the Commission's findings if they are against the manifest weight of the evidence. *Gano Electric Contracting v. Industrial Comm'n*, 260 Ill. App. 3d 92, 95 (1994). A finding is against the manifest weight of the evidence when the opposite conclusion is clearly apparent. *Shafer v. Illinois Workers' Compensation Comm'n*, 2011 IL App (4th) 100505WC, ¶ 38. On review, it is not the prerogative of the appellate

court to reweigh the evidence or substitute its judgment for that of the Commission. *Setzekorn v. Industrial Comm'n*, 353 Ill. App. 3d 1049, 1055 (2004).

¶ 23    The Commission was faced with conflicting medical opinions. Dr. Jain diagnosed the claimant with cervical facet syndrome, cervical discogenic pain, and cervical radiculopathy. Dr. Erickson diagnosed the claimant with cervical disc herniation and cervical radiculopathy. They both believed that her injury was related to her work. Dr. Goldberg diagnosed her with cervical strain and found that her arm pain was not related to her work injury because the claimant did not present with it until a year after the injury. The Commission found the opinions of Dr. Jain and Dr. Erickson unpersuasive because they did not review all of the claimant's medical records or job description and were instead based off the claimant's account, who at the hearing proved not to be a very credible witness. They also provided conflicting opinions, and Dr. Erickson stated that the injury was due to repetitive motion, not to the specific injury that the claimant reported. Dr. Goldberg, on the other hand, reviewed all of the claimant's medical records and job description. He reviewed the MRI, finding only a minimal bulge, which he stated was normal. He stated that the MRI showed no neurocompression or any narrowing of the neuro elements and found that surgery or injections would not be beneficial. It was up to the Commission to resolve this conflict, and we will not substitute our judgment for its. Moreover, while the claimant states that she continued to have pain from the last time she was seen by Dr. Brower in September 2013, through when she sought treatment at Michigan Avenue Associates in April 2014, there is nothing in the record to document this. The claimant did not complain of this pain or see any doctors during this time. We do not find that the Commission's decision was against the manifest weight of the evidence.

¶ 24                                    III. CONCLUSION

10

¶ 25    For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island County, which confirmed the Commission's decision.

¶ 26    Affirmed.